THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES
BRIMMER, a/k/a Hollis Hall, *et al.*, Defendants-Appellants.

First District (1st Division)    No. 76-1619

Opinion filed May 8, 1978.

James J. Doherty, Public Defender, of Chicago (James L. Rhodes and John M. Kalnins, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Mary Ellen Dienes, and Michael J. Madden, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendants James Brimmer and Ricardo Norals were convicted of murder, attempt murder, and rape. During their bench trial, evidence indicated that defendants and an accomplice murdered Mrs. Joyce Britt. They also raped and attempted to murder her daughter, Miss Pamela Britt.

After hearing all of the evidence, the defendants were convicted of all three offenses and sentenced to serve concurrent 100 to 200 year prison terms for each offense. On appeal, defendants argue that they were denied a fair trial because of (1) prosecutorial misconduct during the

cross-examination of one of the defendants, and (2) defense counsel's incompetence. They also argue that the sentences imposed were excessive.

We affirm.

Miss Pamela Britt, daughter of the deceased, Mrs. Joyce Britt, testified that on November 25, 1974, she went to Oak Park, Illinois, in order to obtain her mother's paycheck. When she returned home, she knocked on the front door of her family's apartment. After a few minutes, defendant Ricardo Norals, whom she had known for a year and a half, opened the door.

When she entered, she observed that the apartment appeared "all messed up." Miss Britt testified that at this point her mother came running out of the bedroom. She was naked and was being pursued by defendant James Brimmer and a third assailant. Defendant Brimmer was brandishing a pistol.

The third assailant made Miss Britt remove her coat and forced her into the bedroom. There, she struggled with the assailant while he began beating and choking her. She finally relented after her mother admonished her to "Do as they say."

Miss Britt testified that defendant Brimmer was in the bedroom as the third assailant pushed her down on the bed and forcibly had intercourse with her. She did not remember how long he had intercourse with her, but stated that when the unidentified man finished, Brimmer had intercourse with her for about 10 minutes. She testified that when Brimmer came into the bedroom he had a gun which he gave to the third assailant as he was going out. When Brimmer left the bedroom, defendant Norals entered and handed the gun to Brimmer. Norals then had intercourse with her. At the time Miss Britt was 16 years of age.

Miss Britt was permitted to go to the bathroom, where she noticed that her face was severely injured. She splashed water on her face and returned to the living room where she saw the three assailants and her mother. Her mother was dressed in her white work uniform and Pamela observed that she was crying and also that her head was bleeding. She testified that when she sat down beside her mother, defendant Norals asked if they had any money. Informing him that she had a check in her purse, she gave it to defendant Brimmer, telling him that was all the money she had.

Thereafter, defendant Norals went into the middle bedroom and ordered Mrs. Britt, the deceased, to accompany him. Mrs. Britt did as she was instructed, while Pamela remained in the living room with defendant Brimmer and the other assailant.

Miss Britt testified that she sat in a chair while defendant Brimmer put a gun to her head and said "Pow." She responded by saying, "Go ahead and shoot me; shoot me. Please don't hurt my mother." She stated that at this

point she heard several gunshots come from the middle bedroom. Defendant Norals then summoned Brimmer into the bedroom, while the third assailant remained with Pamela, pointing a gun at her. Miss Britt testified that she then heard another gunshot.

In a few moments, both defendants entered the living room. Miss Britt slid off the chair and onto the floor as she heard Norals order the third assailant to "Get her, man, get her." The assailant picked up a pillow and attempted to place it alongside her head. As Miss Britt struggled with the assailant, she was shot twice in the legs. She heard defendant Norals say "Get her again, man; get her again." She was then shot in the neck. At this point, all three assailants fled.

Miss Britt remained on the floor for approximately five minutes and then looked into the bedroom where her mother lay dead. She began screaming and then ran to a neighbor who called the police. An autopsy later revealed that Mrs. Britt had been shot five times: twice in the head, twice in the chest, and once in the abdomen.

During the trial, defendant Brimmer testified on his own behalf. He stated that on November 25, 1974, he went shopping in the downtown area of Chicago at approximately 9:45 a.m. He was alone and testified that at 12:30 p.m., the approximate time the alleged offenses occurred, he went to the McVickers movie theater. He claimed that he was later thrown out of the theater for smoking marijuana by a man whose name he believed was "Sykes." Thereafter, defendant Brimmer stated that he traveled to Detroit, Michigan on a Greyhound bus, using money he obtained from shooting dice. According to Brimmer, he remained in Detroit until Thanksgiving, visiting a person named Johnny Jackson.

Defendant Brimmer further testified that he did not invade the Britt apartment on November 25, 1974. Moreover, he denied having murdered Joyce Britt and having raped and attempted to murder Pamela Britt.

The court found the defendants guilty of the murder of Mrs. Joyce Britt and the rape and attempted murder of Pamela Britt. Each defendant was sentenced to serve 100 to 200 years for each conviction, the sentences running concurrently.

On appeal, defendants first contend that they were denied effective assistance of counsel because their retained attorney: (a) failed to ascertain whether the preliminary hearing testimony was accurately reproduced in the transcript of that hearing; (b) failed to contact an alibi witness for defendant Brimmer; and (c) violated defendants' right to a speedy trial. We will discuss each of these points separately.

Defendants argue that during the trial, their attorney did not adequately pursue the possibility that the preliminary hearing was inaccurately recorded in the transcript of that hearing. During trial, the defendants informed their attorney that Pamela Britt's testimony differed

with her testimony at the preliminary hearing. Apprised of this fact, their attorney allegedly failed to advise the court as to what respects the testimony differed. He also failed to question the court reporter or to otherwise ascertain whether the testimony at the preliminary hearing was accurately reported. Defendants argue that their attorney's failure to pursue the matter clearly prejudiced their case since Pamela Britt was the sole identifying witness and her credibility was critical.

■■■ We disagree. To establish a denial of one's constitutional right to a fair trial because of incompetency of counsel, a defendant must clearly establish not only actual incompetence, but also that substantial prejudice resulted therefrom. (*People v. Logue* (1970), 45 Ill. 2d 170, 258 N.E.2d 323.) Further, the resulting prejudice must have been sufficient to affect the outcome of the trial. (*People v. Logue.*) Moreover, the fact that defense counsel did not take action that he arguably might have, does not establish incompetency of counsel in the absence of a showing that such action would have produced evidence affecting the guilt or innocence of the accused. *People v. Goines* (1974), 20 Ill. App. 3d 1055, 314 N.E.2d 193.

■■■ From a reading of the record, it is clear that defense counsel *did* advise the trial court of defendants' belief that Pamela Britt's testimony during trial conflicted with her testimony at the preliminary hearing. In fact, he noted that defendants' recollection of Miss Britt's testimony during the preliminary hearing did not "jive" with the transcript from the proceeding. While defense counsel could have attempted to ascertain whether the transcripts were accurate, he apparently believed that they were and pursued the matter no further. This was an exercise of judgment by defense counsel, and beyond the scope of review when evaluating attorney competency. (*People v. Newell* (1971), 48 Ill. 2d 382, 268 N.E.2d 17.) Furthermore, there is nothing in the record that indicates defendants were prejudiced by defense counsel's actions, especially when viewed in light of the overwhelming evidence of guilt.

Defendant Brimmer contends that defense counsel was incompetent because of his failure to secure the presence of Brimmer's purported alibi witness, "Mr. Sykes."

■■ We disagree. The record discloses that on February 23, 1976, defense counsel requested a continuance so that information concerning a potential witness, "Mr. Sykes" could be investigated and that information used "if the information should bear fruit."

During trial, Brimmer testified that he never asked Mr. Sykes to testify on his behalf. Furthermore, Brimmer testified that Sykes told him that he merely "looked like" a man thrown out of the McVickers theater for smoking marijuana. Brimmer ventures into the realm of conjecture and speculation when he argues that further investigative efforts by defense

counsel would have produced a witness to corroborate his alibi. As held in *People v. Thomas* (1972), 51 Ill. 2d 39, 280 N.E.2d 433, a claim of prejudice cannot be based on mere conjecture. It is also possible that defense counsel chose not to call Sykes as a witness because his information did not "bear fruit."

Defendants' final argument concerning the alleged incompetency of their defense counsel relates to his decision to agree to a State request for a two-week continuance, prior to trial. They argue that the two-week delay deprived them their right to a speedy trial and that their attorney agreed to the continuance because he was not ready for trial.

■■■ It is our view that defendants were not deprived of their right to a speedy trial. Where a defendant has obtained a continuance, the four-term period, during which he must be brought to trial, is renewed and begins to run from the day the delay occurred. (*People v. DeStefano* (1965), 64 Ill. App. 2d 389, 212 N.E.2d 357.) It is axiomatic that delays occasioned by the defendant's counsel are attributed to the defendant. (*People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840; *People v. Young* (1970), 46 Ill. 2d 82, 263 N.E.2d 72.) Further, acquiescence to the State's request for a continuance is treated as a delay occasioned by the defendant. (*People v. Hudson* (1970), 46 Ill. 2d 177, 263 N.E.2d 473; *People v. DeStefano* (1965), 64 Ill. App. 2d 389, 212 N.E.2d 357.) Therefore, because defense counsel acquiesced to the two-week continuance in this case, the delay is attributable to defendants. They cannot allege that they were deprived of a speedy trial, since they contributed to the delay.

However, defendants also contend that because their attorney was not ready for trial at the time of the continuance, he was incompetent.

■■ We do not agree. In Illinois, the test for determining the competency of retained counsel is whether the representation reduced the trial to a farce or sham. (*People v. Torres* (1973), 54 Ill. 2d 384, 297 N.E.2d 142.) We can find nothing in the record that indicates defendants' case was in any way prejudiced by the two-week continuance, particularly in view of the overwhelming evidence of guilt. Looking at the record as a whole, we also cannot say that the trial was reduced to a farce or sham.

Defendant Brimmer contends that he was deprived of a fair trial due to prosecutorial misconduct. During cross-examination of defendant Brimmer, the prosecutor asked him if he knew Ronnie Kimbrough, M. T., Herbert Weston, Charles Melton, and Dezi. Brimmer replied in the negative. The purpose of these questions was to lay a foundation for rebuttal evidence that defendant did know these people and that they would be able to rebut Brimmer's testimony that he did not know the Britt family well and had not previously visited their home. However, of the names asked, only Weston was called to testify. Brimmer argues that

the other names were mentioned solely for the purpose of creating the unfavorable inference that they would corroborate a long, friendly relationship between defendant Brimmer and the Britts. Defendant argues that such misconduct requires a new trial and cites· *People v. Nuccio* (1969), 43 Ill. 2d 375, 253 N.E.2d 353, to support his position.

■■ We find no merit to defendant Brimmer's argument. First, it is well-established law in this State that on appeal, a defendant is limited to the errors alleged in a written motion for a new trial. (*People v. Fain* (1976), 41 Ill. App. 3d 872, 355 N.E.2d 61.) Defendants' motion for a new trial did not specifically state the foregoing alleged error as a ground for reversal. Similarly, defendant Brimmer failed to object to the prosecutor's conduct during the trial and is now barred from raising the issue on appeal. (*People v. Scott* (1972), 52 Ill. 2d 432, 288 N.E.2d 478; *People v. Dailey* (1972), 51 Ill. 2d 239, 282 N.E.2d 129.) Finally, the instant case is distinguishable from the situation in *Nuccio*. The present case did not entail the persistent pattern of prejudicial and unsupported remarks by the State, during cross-examination, as was the case in *Nuccio*. Further, no other similar behavior occurred during the bench trial and the record does not suggest that the State acted in bad faith.

Finally, defendants argue that their concurrent 100 to 200 year prison sentences for each conviction are excessive. We cannot agree.

■■ Here, the trial judge was faced with three heinous offenses. During the hearing in aggravation and mitigation, he heard testimony concerning the possibility of rehabilitation, prior criminal records and the nature and circumstances surrounding the offenses. All were admissible. (*People v. Dennis* (1970), 47 Ill. 2d 120, 265 N.E.2d 385, *cert. denied* (1971), 403 U.S. 907, 29 L. Ed. 2d 683, 91 S. Ct. 2212; *People v. Parker* (1976), 40 Ill. App. 3d 597, 352 N.E.2d 394.) Judging from the facts disclosed in the record and the care with which the trial judge considered these facts when imposing sentence, we cannot say that the sentences were excessive.

For the foregoing reasons, the judgments of the circuit court of Cook County are affirmed.

Judgments affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.