NO. 4-99-0280

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, 

Plaintiff-Appellant,

v.

MARCELO LEDESMA, GUADALUPE JOSE PEREZ, RICHARD W. ROTH, JR., and JEREMY A. EDWARDS,

Defendants-Appellees.

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

Vermilion County

No. 98CF518

Honorable

John P. O'Rourke,

Judge Presiding.

_________________________________________________________________

JUSTICE MYERSCOUGH delivered the opinion of the court:

In September 1998, the State charged defendants Marcelo Ledesma, Guadalupe Jose Perez, Richard W. Roth, Jr., and Jeremy A. Edwards with the following crimes:  (1) possession of more than 5,000 grams of cannabis (720 ILCS 550/4(g) (West 1998)) and (2) delivery of cannabis (720 ILCS 550/5(f) (West 1998)).  In January 1999, defendants jointly filed a motion to suppress, arguing that officers improperly stopped defendants based solely on a tip an anonymous informant received by illegally intercepting a cellular telephone conversation in violation of state and federal law.

In February 1999, the trial court held a hearing on the motion to suppress.  In March 1999, the trial court granted defendants' motion.  The State filed a certificate of impairment and now appeals the trial court's ruling.  We reverse and remand.

I. BACKGROUND

In September 1998, the State charged defendants with possession of more than 5,000 grams of cannabis and delivery of cannabis.  In January 1999, defendants jointly filed a motion to suppress, arguing that the initial stop of defendants was improper because it was based solely upon information an informant received by illegally intercepting a cellular telephone conversation.

In February 1999, the trial court held a hearing on the motion to suppress.  At the hearing, an officer of the Tilton police department testified that, on the evening of September 18, 1998, he was on duty and received a dispatch regarding a possible drug transaction.  An anonymous informant had called 911, alerting authorities that a drug deal was about to take place in the parking lot of the Aldi store on Georgetown Road in Tilton, Illinois, involving one teal-colored automobile.  The informant indicated that he learned of this transaction when his scanner intercepted or "picked-up" a cellular telephone conversation.

This officer requested assistance from other officers on duty that evening.  Officers positioned themselves in a parking lot across from the Aldi parking lot.  Not long after they arrived, officers witnessed a teal-colored automobile drive into the empty Aldi parking lot.  The teal-colored car then drove out of the Aldi parking lot and stopped in the Speedway parking lot adjacent to Aldi's.  Next, officers witnessed a purple-colored automobile drive into the Aldi parking lot, exit the Aldi parking lot, and drive up alongside the teal-colored car.  After being stopped next to each other momentarily with their headlights off, both vehicles switched on their lights and left the Speedway parking lot, following each other north on Route 1.  The officers, stationed in separate vehicles, stopped both the teal- and purple-colored automobiles.  Officers testified that the stop was based solely upon information received from the anonymous tip.  The officers testified that they observed no traffic violations by either car prior to the stop and that no search or arrest warrants had been issued prior to the stop.

Defendant Ledesma was driving the teal-colored vehicle.  Perez was a passenger in that vehicle.  Defendant Roth was driving the purple-colored vehicle.  Edwards was a passenger in that vehicle.  After stopping Ledesma, the officer asked him if there were any drugs or alcohol in his vehicle.  Ledesma denied having any drugs or alcohol.  The officer asked to "take a look" in Ledesma's vehicle.  Ledesma indicated that such a search was "no problem," but asked the purpose of the search.  The officer responded that he had reason to believe that Ledesma's vehicle contained drugs, after which Ledesma became "unsure" about the search.  Despite his uneasiness, Ledesma never limited or withdrew his consent to search his vehicle.

   The officers then asked Ledesma and Perez to step out of the vehicle.  Officers then walked a canine unit around Ledesma and Perez.  The canine indicated on Perez's pants.  Officers then walked the canine around the vehicle and the canine alerted on each side of the vehicle, at each door.  Officers then opened the vehicle to the canine, which alerted on the passenger's seat and on a black cloth bookbag lying on the floorboard on the passenger side of the vehicle.

While the officer searched Ledesma's vehicle, other officers placed Roth under arrest for driving with a revoked license.  Roth indicated that his "bond" was under the front seat of his vehicle.  Officers retrieved approximately $5,000 in cash from underneath the front seat of Roth's vehicle.

After the suppression hearing, the trial court took the matter under advisement.  In March 1999, the trial court issued its ruling, granting defendants' motion to suppress evidence, stating:

"Although[] the defendants' position regarding the intercepted communication is persuasive and not rebutted with any authority from the State, there is further reason to question the stop in this case.  Based upon the totality of the circumstances in this case, the so-called 
Terry
 stop [
Terry v. Ohio
, 392 U.S. 1, 20, L. Ed. 2d 889, 88 S. Ct. 1868 (1968)] was not justified.  In this case, there were no activities to show a reasonable and articulable suspicion of criminality to justify the stop.  There has to be something more concrete than a vague and anonymous informant's tip.  There was insufficient independent corroboration of the 'tip' in this case to justify the initial stop. [Citations.]"

The trial court also found that the search exceeded the consent given by Ledesma.  This appealed followed.

II. ANALYSIS

A. Propriety of the Anonymous Tip

Initially, defendants note that officers based their decision to stop defendants' vehicles solely on the information received from the anonymous tip.  Defendants argue that the informant's information was obtained in violation of both Illinois and federal law and was properly suppressed as a result of the unwarranted stop.  Our appellate court has previously found that both Illinois and federal law are applicable to eavesdropping cases.  See generally 
People v. Wilson
, 196 Ill. App. 3d 997, 554 N.E.2d 545 (1990).

A reviewing court will not disturb a trial court's determination at a suppression hearing unless it is manifestly erroneous.  
People v. Alvarado
, 268 Ill. App. 3d 459, 463, 644 N.E.2d 783, 786-87 (1994).  Such a judgment will not be found to be against the manifest weight of the evidence unless it appears from the record that an opposite conclusion is clearly evident.  
City of Lake Forest v. Dugan
, 206 Ill. App. 3d 552, 555, 564 N.E.2d 929, 930 (1990).  Where there is no factual dispute, however, we review the decision 
de
 
novo
.  
Alvarado
, 268 Ill. App. 3d at 463, 644 N.E.2d at 787.  Here, there is no dispute as to the facts, and we review the case 
de
 
novo
.

1. 
Federal
 
Law

Federal law prohibits the use of intentionally intercepted wire or oral communications as evidence in criminal or civil proceedings.  18 U.S.C. §2515 (1994).  Federal law specifically provides:

    "Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter [119]."  18 U.S.C. §2515 (1994).

With only limited exceptions, inapplicable in this case, a person violates the provisions of chapter 119 who:

    "(a) 
intentionally
 intercepts, endeavors to intercept *** any wire, oral, or electronic communication;

    ***

    (c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection ***."  (Emphasis added.)  18 U.S.C. §2511(1)(a), (1)(c) (1994).

The United States Senate Report accompanying the 1986 amendments to the Wiretap Law specifically lists and describes the technologies addressed by the statute, including electronic mail, computer-to-computer communications, electronic bulletin boards, microwave, cellular telephones, cordless telephones, electronic pagers, pen registers/trap and trace devices, electronic tracking devices, and remote computer services.  S. Rep. No. 99-541, at 8-11 (1986), 
reprinted in
 1986 U.S.C.C.A.N.  3555, 3562-65.

In the present case, nothing in the record suggests that the anonymous informant 
intentionally
 intercepted the cellular telephone conversation regarding the meeting at Aldi's parking lot.  The facts suggest that the informant was listening to emergency communications by law enforcement agencies and emergency service providers when his scanner picked up the communication.  The interception was, therefore, not in violation of chapter 119 provisions.

2. 
State
 
Law

Defendants also argue that, even if the tip were lawful under the federal wiretapping statutes, the anonymous tip violated Illinois eavesdropping statutes and, therefore, was not admissible in court.  We disagree.

Section 14-5 of the Criminal Code of 1961 (Code) provides:

    "Any evidence obtained in violation of this [a]rticle is not admissible in any civil or criminal trial, or any administrative or legislative inquiry or proceeding, nor in any grand jury proceedings; provided, however, that so much of the contents of an alleged unlawfully intercepted, overheard[,] or recorded conversation as is clearly relevant, as determined as a matter of law by the court in chambers, to the proof of such allegation may be admitted into evidence in any criminal trial or grand jury proceeding brought against any person charged with violating any provision of this [a]rticle."  720 ILCS 5/14-5 (West 1998).

With limited exceptions, section 14-2 of the Code provides in part:

"A person commits eavesdropping when he:

(a) Uses an eavesdropping device to hear or record all or any part of any conversation ***; or

(b) Uses or divulges *** any information which he knows or reasonably should know was obtained through the use of an eavesdropping device."  720 ILCS 5/14-2 (West 1998).

An exception to section 14-2 is found in section 14-3(d), which exempts:

“(d) Recording or listening with the aid of any device to any emergency communication made in the normal course of operations by any federal, state[,] or local law enforcement agency or institutions dealing in emergency services, including, but not limited to, hospitals, clinics, ambulance services, fire fighting agencies, any public utility, emergency repair facility, civilian defense establishment[,] or military installation ***."  720 ILCS 5/14-3(d) (West 1998).

In the present case, the informant was lawfully using a scanner to listen to publicly transmitted emergency communications under the section 14-3(d) exception.  The informant's inadvertent interception was merely incidental to this lawful activity.  Accidental overhears or recordings of a defendant's conversation do not violate the eavesdropping statute.  See 
People v. Calvert
, 258 Ill. App. 3d 504, 515, 629 N.E.2d 1154, 1161 (1994) (holding that accidental recording of the defendant's conversation was lawful and did not preclude the in-court admission of the tape).  Therefore, the accidental interception could be introduced in court, and the evidence derived therefrom need not be suppressed.

B. Propriety of the Stop

Defendants argue that police officers lacked sufficient probable cause to conduct the stops.  We disagree.

"[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest."  
Terry
, 392 U.S. at 22, 20 L. Ed. 2d at 906-07, 88 S. Ct. at 1880.  Such a stop is permitted to investigate the articulable suspicions of the officer that the person stopped had committed or was about to commit a crime.  
Terry
, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880.  With all 
Terry
 stops, the police officer's conduct must be reasonable under the circumstances known to the officer at the time he initiated the stop.  
Terry
, 392 U.S. at 21-22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880.  To be considered reasonable, a 
Terry
 stop must be based upon more substantial facts than a police officer's hunch.  
Terry
, 392 U.S. at 22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880.  To justify a temporary detention, the police officers must point to specific, articulable facts which, when considered with natural inferences, make the intrusion reasonable.  
People v. Smithers
, 83 Ill. 2d 430, 436, 415 N.E.2d 327, 331 (1980).

Defendants argue that the officers' stop was tainted because officers admitted at the suppression hearing that they stopped defendants' vehicles based solely upon the anonymous tip.  However, sufficient corroboration existed to allow the police to justifiably rely upon the tip.

"Where an informant's tip is received by telephone, it may form the basis for a lawful 
Terry
 stop, but the information must bear some indicia of reliability, and the information upon which the police act must establish the requisite quantum of suspicion."  
People v. Ertl
, 292 Ill. App. 3d 863, 869, 686 N.E.2d 738, 743 (1997), 
appeal denied
, 176 Ill. 2d 581, 690 N.E.2d 1383 (1998).  Probable cause cannot be based solely on an anonymous tip that merely provides the static details of a suspect's life along with an allegation of criminal conduct.  
People v. Brannon
, 308 Ill. App. 3d 501, 505, 720 N.E.2d 348, 352 (1999), citing 
People v. Yarber
, 279 Ill. App. 3d 519, 529, 663 N.E.2d 1131, 1138 (1996).  Where the reliability of the information obtained from an anonymous informant cannot be easily corroborated and there are no other suspicious circumstances known to the police, a stop may be found unwarranted.  
Ertl
, 292 Ill. App. 3d at 869, 686 N.E.2d at 743-44.  Therefore, an anonymous tip, standing alone, without corroboration, is insufficient to justify a 
Terry
 stop.  
Yarber
, 279 Ill. App. 3d at 528, 663 N.E.2d at 1137.  However, where an anonymous tip can be easily corroborated, a stop may be justified.

In the present case, the anonymous informant reported to 911 emergency services that he overheard a cellular call indicating criminal activity was about to take place, 
i.e.
, a teal-colored car would meet another car in the parking lot at Aldi's store on Georgetown Road in Tilton, Illinois, for a drug transaction.  Based upon this tip, officers watched the area from a parking lot across from the Aldi parking lot.  A few minutes later, officers saw a teal-colored car drive into the empty Aldi lot, pull out of that lot, and stop in the adjacent Speedway parking lot.  No other teal-colored cars were in the area.  A purple-colored car then drove into the Aldi parking lot, but immediately pulled into the Speedway lot beside the teal-colored car.  Both vehicles turned their lights off.  After a couple of minutes, the cars' headlights came on and they proceeded north on the highway.

We conclude the anonymous tip, coupled with the factual corroboration of the tip's content, provided sufficient articulable suspicion to warrant the stops in this case.  See 
People v. Williams
, 147 Ill. 2d 173, 210, 588 N.E.2d 983, 995 (1991) (sufficient corroboration of anonymous tip for probable cause to search where informant advised police that persons responsible for slayings were in a crowd of spectators surrounding crime scene and had a red Toyota and police observed defendant walking briskly away from police toward a red auto while looking over his shoulder); 
People v. Wilson
, 250 Ill. App. 3d 838, 844, 620 N.E.2d 499, 503-04 (1993) (stating that "the corroborated details of the informant's tip--that a particular car was at a particular location at a given time--was sufficient to establish probable cause”), citing 
People v. Beck
, 167 Ill. App. 3d 412, 418-19, 521 N.E.2d 269, 274 (1988).

C. Propriety of the Vehicle Search

Defendants next argue that, even if the stop was proper, the officers searched Ledesma's vehicle without a warrant, probable cause, or consent.  We disagree.

The fourth amendment to the United States Constitution protects people from unreasonable searches and seizures of their persons, houses, papers, and effects.  U.S. Const., amend. IV.  "A search conducted without a search warrant is 
per
 
se
 unreasonable unless it is a search conducted pursuant to consent, a search incident to arrest, or a search predicated upon probable cause where there are exigent circumstances which make it impractical to obtain a warrant."  
People v. Alexander
, 272 Ill. App. 3d 698, 704, 650 N.E.2d 1038, 1044 (1995).

A search conducted pursuant to consent is one of the specifically established exceptions to the fourth amendment requirements of both a warrant and probable cause.  
People v. Sanchez
, 292 Ill. App. 3d 763, 769, 686 N.E.2d 367, 371 (1997).  "A driver of a vehicle has authority to consent to a search of the vehicle because he has immediate possession and control of the entire vehicle."  
Sanchez
, 292 Ill. App. 3d at 769, 686 N.E.2d at 371.  A consent to search is valid under the fourth amendment only if it is voluntary.  
Sanchez
, 292 Ill. App. 3d at 769, 686 N.E.2d at 371-72, citing 
Ohio v. Robinette
, 519 U.S. 33, 40, 136 L. Ed. 2d 347, 355, 117 S. Ct. 417, 421 (1996).  "Voluntariness is a question of fact to be determined from the totality of the circumstances."  
Sanchez
, 292 Ill. App. 3d at 769, 686 N.E.2d at 372, citing 
Robinette
, 519 U.S. at 40, 136 L. Ed. 2d at 355, 117 S. Ct. at 422.  Consent is not voluntary where it is the product of official coercion, intimidation, or deception.  
Sanchez
, 292 Ill. App. 3d at 769, 686 N.E.2d at 372.

"When the police rely upon consent as the basis for a warrantless search, they have no more authority than they have apparently been given by the voluntary consent of the defendant."  
People v. Baltazar
, 295 Ill. App. 3d 146, 149, 691 N.E.2d 1186, 1189 (1998), 
appeal denied
, 178 Ill. 2d 583, 609 N.E.2d 1033 (1998).  A defendant has the right to place express limitations on the scope of his consent and may withdraw the consent before any incriminating evidence is found.  
Baltazar
, 295 Ill. App. 3d at 151, 691 N.E.2d at 1190.  The scope of the consent to search is not based on the subjective intentions of the consenting party or the subjective interpretation of the searching officer.  Rather, the standard for measuring the scope of a *** consent is that of 'objective reasonableness,' which requires consideration of what a 'typical, reasonable person [would] have understood by the exchange between the officer and the suspect.'"  
Baltazar
, 295 Ill. App. 3d at 149-50, 691 N.E.2d at 1189, quoting 
Florida v. Jimeno
, 500 U.S. 248, 251, 114 L. Ed. 2d 297, 302, 111 S. Ct. 1801, 1803-04 (1991). 

In most instances, a trial court can make this determination easily because it ordinarily defines the scope of a search by evaluating the police officer's express focus or purpose of the search, 
i.e.
, what was the object for which the officers stated they were looking
?  
Baltazar
, 295 Ill. App. 3d at 150, 691 N.E.2d at 1189, citing 
Jimeno
, 500 U.S. at 251, 114 L. Ed. 2d at 303, 111 S. Ct. at 1804.  "By stating the intended object of the search either directly or by revealing a suspicion of specific criminal activity, a police officer not only apprises the suspect that his constitutional rights are being impacted, but he also informs the suspect of the reasonable parameters of his inquiry."  
Baltazar
, 295 Ill. App. 3d at 150, 691 N.E.2d at 1189.

Moreover, "it is not necessary for a police officer to specifically use the term 'search' to constitute a valid search request under the fourth amendment."  
Baltazar
, 295 Ill. App. 3d at 150, 691 N.E.2d at 1190.  However, the officer's words, when viewed in context, must objectively communicate to a reasonable person that the officer is seeking permission to examine the vehicle and its contents.  
Baltazar
, 295 Ill. App. 3d at 150-51, 691 N.E.2d at 1190.

In the present case, the trial court also found that Ledesma gave a valid consent to search.  However, the trial court 
found that the officers exceeded the scope of that consent by searching the vehicle and its containers when Ledesma had only permitted the officers to "look in" the vehicle.  We disagree.

In 
People v. Kelk
, 231 Ill. App. 3d 797, 596 N.E.2d 1267 (1992), officers stopped a defendant for a loud muffler and wrong lane usage.  The officers asked the defendant if there were any drugs or weapons in the vehicle, and the defendant responded that there were not.  The officers asked the defendant if the defendant cared if they "looked in" the car.  The defendant stated that he did not care.  Officers found cannabis in a duffle bag in the defendant's vehicle.  The trial court suppressed the evidence because the officers exceeded the scope of the defendant's consent to search.  We reversed the trial court's decision, finding that the officers' question of whether there were any drugs in the vehicle, coupled with the request to "look in" the car, "sufficiently informed the suspect of what the officer intended to do, and, under those circumstances, the officer could reasonably consider the defendant's statement--that he did not care if the officer looked in his car--to be a general consent to a search of that car, including contents thereof."  
Kelk
, 231 Ill. App. 3d at 801, 596 N.E.2d at 1269.  Therefore, we concluded that the trial court erred in granting the defendant's motion to suppress, vacated the order, and remanded for further proceedings.  The case at bar is nearly identical.

In the present case, after stopping Ledesma's vehicle, an officer asked him if there were any drugs or alcohol in his vehicle.  Ledesma stated that there were not.  The officer asked Ledesma if "there was any reason that [he] couldn't take a look in [Ledesma's] vehicle."  Ledesma replied that such a look was "no problem."  Ledesma later inquired as to the purpose of the search, yet never limited or withdrew his consent.  We find that Ledesma gave a valid general consent permitting officers to search the vehicle and its contents.  Therefore, the trial court erred by granting defendants' motion to suppress evidence.

III. CONCLUSION

For the above reasons, we conclude 
that the trial court erred in suppressing the evidence in this case.  We reverse the trial court's order granting defendants' motion to suppress and remand this case for further proceedings.

Reversed and remanded.

McCULLOUGH, P.J., and STEIGMANN, J., concur.