NO. 4-03-0538      Filed 5/19/08

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
|      Plaintiff-Appellee, | ) | Circuit Court of |
|      v. | ) | Vermilion County |
| ANDRE ROLLINS, | ) | No. 02CF562 |
|      Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Craig H. DeArmond |
| | ) | Judge Presiding. |

_____

JUSTICE MYERSCOUGH delivered the opinion of the court:

The State appeals the trial court's order suppressing evidence recovered from defendant's vehicle during a traffic stop.  Police officers conducted a stop of defendant's vehicle in response to a tip from an anonymous caller to the police emergency dispatch that alleged an unidentified male was selling drugs out of a described vehicle.  The court held the anonymous tip was insufficient to provide police with the required articulable suspicion to perform a traffic stop.  We disagree, reverse, and remand.

I. BACKGROUND

On December 2, 2002, the State charged defendant with unlawful possession of between 1 and 15 grams of cocaine with intent to deliver, a Class 1 felony (720 ILCS 570/401(c)(2) (West 2000)).  On January 22, 2003, defendant filed a motion to suppress, claiming the arresting officer did not have reasonable

suspicion or probable cause to detain and arrest defendant during the traffic stop.

On April 24, 2003, the trial court conducted a hearing on defendant's motion. Danville police officers Michael Cox and Richard Lee Dicken testified to the events of November 29, 2002, as follows. Cox was on routine patrol when he received a telephone call from Patricia Stuebe, a 9-1-1 dispatcher, who told Cox she had received a telephone call from an anonymous caller informing her that a brown four-door Chevrolet without hubcaps and driven by a black male from Chicago was on Fowler Street in front of Green Meadows apartment complex (Edgewood Street) selling drugs from the trunk of the vehicle. No other information regarding the call or the caller was relayed to Cox.

Cox notified Dicken via his patrol car's onboard computer. Dicken arrived in the area first and notified Cox via radio that a green Cadillac, not one matching the reported description, had pulled into Green Meadows' parking lot. Cox and Dicken approached the vehicle and discovered four females inside. The officers explained to the women why they had approached the car and told the women they were free to go. As the officers returned to their patrol cars, a vehicle matching the reported description, a brown four-door Chevrolet with no hubcaps, turned from Fowler onto Edgewood. The officers noticed that the occupants of the brown Chevrolet were black males. Dicken initiated

- 2 -

a traffic stop of the vehicle on the basis of the tip.

Dicken approached the driver (defendant), and Cox approached the passenger. When asked, defendant told Dicken that he was from Chicago, and he produced a driver's license with a Chicago address. A driver's license check on defendant and his passenger revealed no outstanding warrants; however, the officers then began to "hear criminal histories" on both, which included reported gang affiliation, weapons charges, and prior drug arrests. Dicken told defendant he had information that there were drugs in the vehicle. Defendant denied that information and gave Dicken permission to search. Dicken searched defendant and found "a large amount of money" while Cox received permission to search the passenger.

Dicken began searching the vehicle and immediately gave Cox "some kind of indication that something was there." Cox placed the passenger in handcuffs, sat him in his patrol car, and assisted with the search of the vehicle. Dicken found a plastic bag containing four or five smaller bags of cannabis under the driver's seat. The officers then found cocaine in the trunk in a large garbage bag among clothes. Cox asked defendant if anything in the vehicle belonged to the passenger. Defendant said it did not--everything was his. Cox estimated that five or six minutes had passed from the time the vehicle was stopped until the drugs were discovered.

On June 9, 2003, the trial court entered an order suppressing the evidence, finding that defendant was detained and searched unlawfully. Citing this court's decision in People v. Ledesma, 327 Ill. App. 3d 805, 763 N.E.2d 806 (2002), the court found that the anonymous tip was an insufficient basis for the officer's stop. This appeal followed. On October 31, 2007, the Fifth District office of the Appellate Defender (OSAD) filed a motion to dismiss the appeal because of appellate delay. This court denied that motion on November 9, 2007. OSAD filed its brief on November 27, 2007. On December 4, 2007, this court denied OSAD's motion to reconsider the denial of its motion to dismiss. We reverse and remand.

## II. ANALYSIS

### A. The Trial Court Erred in Granting the Motion To Suppress

When reviewing a trial court's ruling on a motion to suppress, we give deference to the court's findings of fact and will reverse those findings only if they are against the manifest weight of the evidence. People v. Roberson, 367 Ill. App. 3d 193, 195, 854 N.E.2d 317, 320 (2006). However, we decide, without any deference to the trial court, the ultimate legal question of whether the evidence should be suppressed by applying a de novo standard of review. Roberson, 367 Ill. App. 3d at 195, 854 N.E.2d at 320. The court's suppression was both manifestly erroneous and error as a matter of law.

In <u>Terry v. Ohio</u>, 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1879-80 (1968), the United States Supreme Court created a limited exception in the context of brief investigatory police stops to the standard requirement that police seizures be supported by probable cause. According to the standards set forth in <u>Terry</u>, a police officer may briefly detain and question individuals to investigate possible criminal behavior if "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion" are present. <u>Terry</u>, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880. Our Supreme Court of Illinois has explained that to justify a <u>Terry</u> stop, the police must point to specific, articulable facts that make the intrusion reasonable. <u>People v. Ledesma</u>, 206 Ill. 2d 571, 583, 795 N.E.2d 253, 262 (2003), <u>overruled on other grounds by People v. Pitman</u>, 211 Ill. 2d 502, 513, 813 N.E.2d 93, 101 (2004). "An officer may initiate a <u>Terry</u> stop based on information provided by a third party if the information is reliable and 'allows an officer to reasonably infer that a person was involved in criminal activity.'" <u>People v. Shafer</u>, 372 Ill. App. 3d 1044, 1049, 868 N.E.2d 359, 362-63 (2007), quoting <u>People v. Jackson</u>, 348 Ill. App. 3d 719, 729, 810 N.E.2d 542, 553 (2004).

Our supreme court has discussed the use of telephone tips as the basis for a <u>Terry</u> stop, stating as follows: "Where

- 5 -

an informant's tip is received by telephone, it may form the basis for a lawful Terry stop, but the information must bear some indicia of reliability, and the information upon which the police act must establish the requisite quantum of suspicion." Ledesma, 206 Ill. 2d at 583, 795 N.E.2d at 262. Anonymous calls made to police emergency dispatch carry a greater indicia of reliability than a tip provided by a confidential informant because (1) the caller's identity may at some point become known based on the fact that the 9-1-1 system provides police with enough information so that users are not truly anonymous, and (2) the caller subjects himself to a criminal charge if the report is false or misleading. Shafer, 372 Ill. App. 3d at 1050-51, 868 N.E.2d at 364.

Defendant relies on People v. Starks, 315 Ill. App. 3d 786, 734 N.E.2d 216 (2000), to support his argument that the trial court correctly granted his motion to suppress because the anonymous tip, which was the sole basis for the stop, lacked any indicia of reliability. However, Sparks is distinguishable from the case sub judice.

In Sparks, the police arrested the two defendants for drug-related offenses after a search of their vehicle uncovered cannabis. Police conducted a Terry stop of the vehicle based solely upon a tip from a confidential source that the two defendants would be traveling south on Interstate 55 with contraband

- 6 -

in the car.  The source, a known police informant, gave the police the defendants' names, their races, their ages, a detailed description of the vehicle, and the approximate time at which they would be traveling through the area.  A surveillance team was positioned on the interstate at the expected time, and upon spotting the vehicle, they initiated a stop.  The officers asked both of the defendants if they could search the vehicle, but they refused.  Canine units arrived within minutes, performed a sniff of the vehicle, and alerted to the trunk of the car where the drugs were found.  Sparks, 315 Ill. App. 3d at 788-89, 734 N.E.2d at 218-19.

The trial court suppressed the evidence, finding that the informant's tip failed to establish the informant's basis of his knowledge.  The State appealed.  In analyzing the constitutionality of the stop, this court, citing Alabama v. White, 496 U.S. 325, 329, 110 L. Ed. 2d 301, 308, 110 S. Ct. 2412, 2415 (1990), noted that the informant's veracity, reliability, and basis of knowledge should be considered.  Sparks, 315 Ill. App. 3d at 792, 734 N.E.2d at 221.  Realizing that it is often difficult to ascertain these things from an anonymous tip, the Supreme Court in White held that the tip must provide some indicia of reliability.  Sparks, 315 Ill. App. 3d at 793, 734 N.E.2d at 222; White, 496 U.S. at 329, 110 L. Ed. 2d at 308, 110 S. Ct. at 2416.  Distinguishing White (where the Court held that the anonymous tip

- 7 -

was sufficiently reliable where the officers corroborated the information contained in the tip before stopping the vehicle (see White, 496 U.S. at 326-27, 110 L. Ed. 2d at 306-07, 110 S. Ct. at 2414-15)), this court held that the informant's tip was insufficient in providing the required level of reliability because the informant provided only "innocent" details regarding the defendants. Sparks, 315 Ill. App. 3d at 795, 734 N.E.2d at 223.

In Sparks, this court found the Supreme Court's decision in Florida v. J.L., 529 U.S. 266, 146 L. Ed. 2d 254, 120 S. Ct. 1375 (2000), controlling. Sparks, 315 Ill. App. 3d at 794, 734 N.E.2d at 223. There, the Court held that an anonymous telephone tip reporting that a man wearing a plaid shirt and standing at a bus stop had a gun was insufficient to justify a Terry stop. J.L., 529 U.S. at 268, 146 L. Ed. 2d at 258-59, 120 S. Ct. at 1377. The Supreme Court stressed that "[t]he reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." J.L., 529 U.S. at 272, 146 L. Ed. 2d at 261, 120 S. Ct. at 1379. Therefore, in Sparks, the informant's tip was found insufficient to justify the Terry stop:

> "The informant did not indicate that he had witnessed any criminal activity by [the] defendants or that he had participated in previous criminal activity with them, which

would have lent some credibility to his story. [Citation.] Simply because the information about the drugs turned out to be correct does not mean that it provided officers, prior to stopping [the] defendants, with a reasonable basis for suspecting them of unlawful conduct." Sparks, 315 Ill. App. 3d at 794-95, 734 N.E.2d at 223, citing J.L., 529 U.S. at 270-71, 146 L. Ed. 2d at 260, 120 S. Ct. at 1378-79.

However, the anonymous 9-1-1 tip here, unlike the types in J.L. and Sparks, provided the officers with a reasonable basis for suspecting that defendant was involved in criminal activity. The tip here was corroborated by a physical description of the driver (black male), the vehicle (brown four-door Chevrolet without hubcaps), the location (Fowler Street in front of Green Meadows apartments on Edgewood Street), the driver's origin (Chicago), and the viewed criminal activity (selling drugs from the trunk of the car).

This information was sufficiently reliable to allow "'an officer to reasonably infer that a person was involved in criminal activity.'" Shafer, 372 Ill. App. 3d at 1049, 868 N.E.2d at 362-63 (2007), quoting People v. Jackson, 348 Ill. App. 3d 719, 729, 810 N.E.2d 542, 553 (2004). Moreover, this

anonymous tip to police emergency dispatch carries a greater indicia of reliability than a confidential informant.

"An informant tip received by telephone may form the basis of a Terry stop if the tip is reliable and the tip allows the officer to reasonably infer that a person was involved in criminal activity.  See Shafer, 372 Ill. App. 3d at 1049, 868 N.E.2d at 362-63.  The factors to consider include (1) the quantity and detail of the information such that the officer may be certain that the vehicle stopped is the one identified by the caller; (2) the time interval between the tip and the police locating the vehicle; (3) whether the tip is based on contemporaneous eyewitness observations; and (4) whether the tip has sufficient detail to permit the reasonable inference that the tipster actually witnessed what she described.  Shafer, 372 Ill. App. 3d at 1050, 868 N.E.2d at 363, quoting [State v.] Sousa, 151 N.H. [297,] 303-04, 855 A.2d [1284,] 1290 [(2004)]."  People v. Ewing, 377 Ill. App. 3d 585, 595, 880 N.E.2d 587, 596 (2007).

Those factors have been established here. Again, the officers knew the vehicle was a brown four-door Chevy with no hubcaps, driven by a black male selling drugs from the trunk, and on Fowler Street in front of Green Meadows apartments on Edgewood Street. Only a short time passed between the tip and the stop in question. The dispatcher called the officer with the information from the anonymous 9-1-1 call around 11 a.m. The officers arrived at the scene 1 to 1 1/2 minutes later and had briefly questioned occupants of an illegally parked green Cadillac when defendant drove up. The police report was apparently completed following the stop at 11:12 a.m. The anonymous caller had witnessed the original activity--selling drugs--and the tip had sufficient detail to permit the reasonable inference that the anonymous caller actually witnessed what she described. Unlike Sparks, the informant in our case did indicate he witnessed criminal activity, which lent credibility to his story.

This case is no different than Ledesma, 327 Ill. App. 3d 805, 763 N.E.2d 806, except that the anonymous caller there had intercepted on his scanner a cellular telephone conversation. That call indicated criminal activity was about to take place, just as the 9-1-1 call here indicated criminal activity was occurring. The corroborating details--the particular car, driver, time, and location--were the same in Ledesma as the case sub judice. Certainly here, where the caller witnessed drugs

- 11 -

being sold out of the car, rather than overhearing an intercepted phone call about future drug activity, the circumstances afford greater reliability. Ongoing sales of drugs from a trunk must provide as much reliability and predictive information as criminal activity that is yet to come. The officers are simply not required to witness a drug transaction to stop under these circumstances.

Further, the 9-1-1 tip is unlike that in J.L., 529 U.S. at 276, 146 L. Ed. 2d at 263-64, 120 S. Ct. at 1381 (Kennedy, J., concurring, joined by Rehnquist, C.J.), where the bare report that a black male in a plaid shirt at a particular bus stop was carrying a gun did not establish reasonable suspicion. That caller had not explained how he knew about the gun or any basis for believing he had inside information. The caller here was a witness to drug sales with corroborating information. Nonetheless, the dissent insists that this tip is not an eyewitness account of criminal activity and that this majority infers from the tip that the caller actually witnessed defendant selling drugs from the car. Again, the officer (Cox) stated he was on routine patrol when he received a telephone call from Patricia Stuebe, a 9-1-1 dispatcher, who told Cox she had received a telephone call from an anonymous caller informing her that a brown four-door Chevrolet without hubcaps driven by a black male from Chicago was on Fowler Street in front of Green

- 12 -

Meadows apartment complex (Edgewood Street) selling drugs from the trunk of the vehicle. The tipster clearly said the black man from Chicago in the brown Chevy without hubcaps was selling drugs from the trunk on Fowler Street in front of Green Meadows apartment complex. Unlike in J.L., this tipster had knowledge of ongoing public criminal activity, not concealed criminal activity. The tipster explained how he knew about that criminal activity--he saw it and gave detailed specifics about it.

The dissent quotes J.L.: "'[a]ll the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L.' (Emphasis added.) J.L., 529 U.S. at 271, 146 L. Ed. 2d at 260-61, 120 S. Ct. at 1379." Slip op. at 19 (Cook, J., dissenting). The dissent goes on to state: "If we substituted the word 'gun' for 'drugs' in the preceding sentence, this case and J.L. would be identical. The caller's report was not sufficient in J.L., and it is not sufficient here." Slip op. at 19 (Cook, J., dissenting). However, substituting the word "drugs" for "gun" does not make this case identical to J.L. The tipster in the case sub judice did explain how he knew about the drugs and provided specific descriptions of the car, location, driver, and criminal activity.

Moreover, the courts have repeatedly recognized the

improvement in reliability of our 9-1-1 systems.  See <u>Shafer</u>, 372 Ill. App. 3d at 1050-51, 868 N.E.2d at 364-65.  No longer are 9-1-1 calls considered anonymous and unreliable.  Clearly, the officers had a reasonable basis for the <u>Terry</u> stop.

### B. Appellate Delay Has Not Deprived Defendant of His Due-Process Rights

Defendant argues this appeal should be dismissed because the excessive delay has deprived him of his due-process right to a speedy appeal and, consequently, a speedy trial. Specifically, defendant argues that (1) OSAD's Fourth Judicial District office failed to file a timely brief because that office did nothing with the case for nearly four years, (2) the State failed to complain in a timely manner to this court about OSAD's failure to file a brief, and (3) this court failed in its responsibility to oversee the orderly and timely disposition of this appeal in the appellate process.

On November 9, 2007, this court denied defendant's motion to dismiss the appeal because of appellate delay.  On December 4, 2007, this court also denied defendant's motion to reconsider denial of defendant's motion to dismiss.  No delay in the case was caused by the State or this court.  All the delay has been caused by defense counsel.  The current but discouraged practice in this court is for OSAD not to make a motion for continuance, but is instead for the State to rely upon OSAD's filing its briefs in as timely a fashion as its backlog permits.

- 14 -

If defendant had been required to file motions for continuance throughout the pendency of the appeal, the elapsed time would have no doubt been attributable to defendant, not the State. The outcome should be no different where the practice does not call for motions for continuance.

Delay will be attributable to the defense where the defendant's actions in fact caused or contributed to the postponement of the trial. People v. Kliner, 185 Ill. 2d 81, 114, 705 N.E.2d 850, 868 (1998). In this regard, the accused is bound by the actions or omissions of his defense counsel (People v. Brimmer, 60 Ill. App. 3d 214, 219, 376 N.E.2d 337, 341 (1978); Kliner, 185 Ill. 2d at 117, 705 N.E.2d at 870; People v. Staten, 159 Ill. 2d 419, 433, 639 N.E.2d 550, 557 (1994)), since an attorney in criminal proceedings is authorized to act on behalf of his client and to determine for him "procedural matters and decisions involving trial strategy and tactics." People v. Bowman, 138 Ill. 2d 131, 141, 561 N.E.2d 633, 638 (1990). Accordingly, the acts of defense counsel cannot be separated from the defendant's own actions. Bowman, 138 Ill. 2d at 141, 561 N.E.2d at 638.

In this case, the defense either caused or contributed to nearly all the delay at issue. The State filed its brief instanter about two weeks after its due date. Defendant's brief was then due to be filed November 11, 2003. Defendant is bound

- 15 -

by his attorney's implicit request for a continuance by following district practice. People v. Steiger, 208 Ill. App. 3d 979, 981, 567 N.E.2d 660, 662 (1991) (criminal defendant "speaks and acts through his attorney"). The delay resulting from requests for continuances and agreements with the prosecution are generally chargeable to the defendant. Kliner, 185 Ill. 2d at 115, 705 N.E.2d at 869 (delay caused by continuances either requested or agreed to by defense is attributable to the defendant). While a neutral reason for delay has been weighed against the State rather than the defendant (People v. Belcher, 186 Ill. App. 3d 202, 206, 542 N.E.2d 419, 422 (1989); People v. Singleton, 278 Ill. App. 3d 296, 300, 662 N.E.2d 580, 583 (1996)), such is not the case here where defendant implicitly requested the delay through his attorney.

Further, as noted in the State's objection to defendant's motion to dismiss on the grounds of appellate delay, the State has relied upon the representation by OSAD that it operated on a first-in, first-out basis. Unfortunately, in this case, the "file was lost." Furthermore, the backlog of cases in OSAD's office is well documented. This backlog is in spite of section 95 of Public Act 89-689, effective December 31, 1996, which amended the State Appellate Defender Act (725 ILCS 105/1 through 11 (West 1994)) to address the backlog of indigent criminal appeals. People v. Dixon, 308 Ill. App. 3d 1008, 1016,

- 16 -

721 N.E.2d 1172, 1178-79 (1999), citing Pub. Act 89-689, §95, eff. December 31, 1996 (1996 Ill. Legis. Serv. 3527, 3541 (West)). The backlog also may explain the transfer of this case from the Fourth District of OSAD to the Fifth District of OSAD. See also, e.g., Strunck v. United States, 412 U.S. 434, 436, 37 L. Ed. 2d 56, 60, 93 S. Ct. 2260, 2262 (1973) (in determining whether the sixth amendment was violated, delay caused by understaffed prosecutors weighs less heavily than intentional delay calculated to hamper defense).

Finally, the delay asserted by defendant does not justify "the severe remedy of dismissing the indictment." United States v. Loud Hawk, 474 U.S. 302, 317, 88 L. Ed. 2d 640, 655, 106 S. Ct. 648, 657 (1986); Barker v. Wingo, 407 U.S. 514, 522, 33 L. Ed. 2d 101, 112, 92 S. Ct. 2182, 2188 (1972); People v. Crane, 195 Ill. 2d 42, 62, 743 N.E.2d 555, 567 (2001) (incarcerated defendant's murder conviction was reversed and a new trial was ordered; the defendant never demanded trial until 24 months had passed; dismissal of charges was too severe a remedy in light of the defendant's inaction and the seriousness of charges).

### III. CONCLUSION

For the foregoing reasons, we reverse the trial court's order granting the motion to suppress and remand.

Reversed and remanded.

- 17 -

McCULLOUGH, J., concurs.

APPLETON, P.J., dissents.

PRESIDING JUSTICE APPLETON, dissenting:

I respectfully dissent and would affirm the trial court's order suppressing the evidence. The majority's opinion thwarts the rights guaranteed by the fourth amendment. In factually similar cases, both this court and the United States Supreme Court have held that an anonymous tip, without corroboration, is insufficient to justify a stop and search. Nevertheless, the majority holds otherwise. The majority relies on the creation of a material fact to distinguish this case from this court's decision in Sparks and the Supreme Court's decision in J.L.

In Sparks, a known informant told police that the defendant was going to be arriving in Springfield from Texas in a car with contraband. The informant provided the following information to the police: (1) the defendant's name, race, and age; (2) the make, model, color, and license-plate number of the car; and (3) the date and approximate time that the car would be arriving in Springfield from Texas on Interstate 55. Compared to the facts of this case, the officers in Sparks had a tremendous amount of detail that could be used to assure them that the informant had "inside information" (see J.L., 529 U.S. at 271, 146 L. Ed. 2d at 260-61, 120 S. Ct. at 1379). Yet, we held it was not enough. Sparks, 315 Ill. App. 3d at 795, 734 N.E.2d at 223. In our opinion, the tip did not provide the officers with

- 19 -

the required reasonable suspicion to justify a <u>Terry</u> stop because "[t]he informant did not indicate that he had witnessed any criminal activity by defendants or that he had participated in previous criminal activity with them, which would have lent some credibility to his story." <u>Sparks</u>, 315 Ill. App. 3d at 794, 734 N.E.2d at 223.

The majority skirts the precedential effect of <u>Sparks</u> by blindly asserting that the anonymous caller "witnessed the original activity--selling drugs--and the tip had sufficient detail to permit the reasonable inference the anonymous caller actually witnessed what she described. Unlike <u>Sparks</u>, the informant in our case <u>did</u> indicate he witnessed criminal activity, which lent credibility to his story." (Emphasis in original.) Slip op. at 10.

Attempting to add credence to the tipster's description of defendant, his vehicle, his location, and his purported criminal activity, the majority insists that the caller's statement that defendant was selling drugs from the trunk of the vehicle equates to an eyewitness account of the same. The Supreme Court has emphatically held otherwise. <u>J.L.</u>, 529 U.S. at 272, 146 L. Ed. 2d at 261, 120 S. Ct. at 1379. In <u>J.L.</u>, the anonymous caller told police that "a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." <u>J.L.</u>, 529 U.S. at 268, 146 L. Ed. 2d at 259, 120 S. Ct. at

- 20 -

1377. The Court held that "[s]uch a tip, however, does not show that the tipster has knowledge of concealed criminal acitivity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." J.L., 529 U.S. at 272, 146 L. Ed. 2d at 261, 120 S. Ct. at 1379. The Court did not infer from the information contained in the tip that the caller actually witnessed the defendant carrying a gun at the bus stop, nor should this court impute from the information contained in the tip that the caller actually witnessed defendant selling drugs from his car. As the Court noted in J.L., "[a]ll the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L." (Emphasis added.) J.L., 529 U.S. at 271, 146 L. Ed. 2d at 260-61, 120 S. Ct. at 1379. If we substituted the word "gun" for "drugs" in the preceding sentence, this case and J.L. would be identical. The caller's report was not sufficient in J.L., and it is not sufficient here.

The majority relies on an uncorroborated telephone call to evade the fourth amendment. For these reasons, I would affirm the trial court.