NO. 4-07-0184    Filed 11/29/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Coles County |
| JAMES C. EWING, | ) | No. 07DT19 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Brian O'Brien, |
| | ) | Judge Presiding. |

JUSTICE MYERSCOUGH delivered the opinion of the court:

In January 2007, defendant, James C. Ewing, was arrested for driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2006)). Defendant's driving privileges were thereafter summarily suspended by the Secretary of State, pursuant to sections 11-501.1(e) and 6-208.1(a)(3) of the Illinois Vehicle Code (625 ILCS 5/11-501.1(e), 6-208(a)(3) (West 2006)).

In January 2007, defendant filed a motion to suppress evidence and a petition to rescind the statutory summary suspension. Following a February 2007 hearing, the trial court granted the motion and petition.

The State appeals, arguing the trial court erred by granting defendant's motion to suppress because the police officer had a reasonable, articulable suspicion to justify a Terry stop (Terry v. Ohio, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)). We agree and reverse.

I. BACKGROUND

At the February 2007 hearing, Officer Michael Sanders

testified he was employed by the Coles County sheriff's department. On January 23, 2007, at approximately 12:56 p.m., Officer Sanders overheard a dispatch from the 9-1-1 dispatch center to the Charleston police department. When asked what he heard over the dispatch, Officer Sanders testified:

> "I believe it was that an employee of
> Crestline Veterinary Clinic believed that the
> defendant was intoxicated and he left in a
> green pickup truck with another white male
> heading eastbound possibly toward Paris,
> Illinois[,] and the driver, Mr. Ewing, was
> possibly intoxicated."

Officer Sanders also heard a license plate number and vehicle description.

Officer Sanders further testified he overheard a Charleston police officer state that he was going to try to intercept the driver of the vehicle. Officer Sanders cut short his lunch, got in his squad car, and headed eastbound. Officer Sanders waited for the suspect vehicle at Harrison Street and Route 16. Within a matter of seconds, Officer Sanders saw the suspect vehicle. Charleston police officer Hank Pauls was in a vehicle behind the suspect vehicle. Officer Sanders did not notice any traffic infractions by the suspect vehicle. However, Officer Sanders activated his overheard emergency lights and pulled onto Route 16 traveling eastbound ahead of Lieutenant Pauls. The driver of the vehicle, defendant, pulled over.

Officer Sanders notified dispatch of the location.

Officer Sanders walked up to the vehicle to address defendant. Officer Sanders did not conduct any field-sobriety testing. No questions were asked of Officer Sanders about what occurred after he addressed defendant.

On cross-examination, Officer Sanders further testified that the information he had when he stopped defendant's vehicle included the license plate number, the registered owner, the type of vehicle, the direction and the place the vehicle was traveling, and that the call was made by an employee of Crestline. Officer Sanders knew Crestline was a veterinary clinic between Charleston and Mattoon.

Lieutenant Pauls of the Charleston police department testified that on January 23, 2007, he heard a dispatch to another officer, "Officer Craig," that two intoxicated individuals had left Crestline and were proceeding eastbound on Route 16 in a green Chevrolet pickup truck with license plate 2377GJ. The dispatch originated from the multijurisdictional central-dispatch service located near the airport. Lieutenant Pauls asked the dispatcher whether an employee of Crestline had made the phone call. The dispatcher informed Lieutenant Pauls that, "'Yes, indeed, an employee had called.'" Based on that dispatch, Lieutenant Pauls attempted to locate the vehicle.

Lieutenant Pauls located the vehicle at the intersection of Lincoln Avenue (we take judicial notice of the fact that in this area of Charleston, Route 16 is also known as Lincoln

Avenue) and First Street heading eastbound. Lieutenant Pauls radioed the location to dispatch. At one point, Lieutenant Pauls was stopped at Fourth Street and Lincoln Avenue while the suspect vehicle was stopped at Ninth Street and Lincoln Avenue. Lieutenant Pauls was able to get into a position to observe the vehicle closely at the intersection of Lincoln Avenue and Hawthorn, near the Wal-Mart Superstore. Lieutenant Pauls confirmed then that it was the suspect vehicle. Lieutenant Pauls did not observe the vehicle commit any traffic infractions.

After Officer Sanders effectuated a stop of defendant's vehicle, Officer Sanders approached the vehicle. Lieutenant Pauls also approached the vehicle and stood at the right rear corner of the vehicle. Defendant, the driver, made a statement that he "could not do any field[-]sobriety testing at the scene."

On cross-examination, Lieutenant Pauls testified he encountered a lot of traffic on Lincoln Avenue and had difficulty catching up to the vehicle because of the traffic.

The defense rested. The State called Adam Brazzell. Brazzell testified he was employed with Coles County 9-1-1. His duties included receiving emergency and nonemergency calls, some of which go to law enforcement and other emergency agencies.

Brazzell testified that on January 23, 2007, at approximately 12:45 p.m., he received a call. Brazzell testified that calls are recorded in the database. He listened to the recording of the call before coming in to court, and it accurately depicted the conversation he had with the caller at that time.

- 4 -

After receiving the phone call, Brazzell "disseminated that to our Charleston officers with the Charleston radio frequency." When asked whether he gave the officers any information about who placed the call, Brazzell testified he "advised them that it was an employee of Crestline."

The State sought to admit the audiotape of the 9-1-1 call and resulting dispatch. Defendant objected, arguing that the only relevant evidence is what the officers said was the basis of their stop. The State argued the tape was relevant to the question of the caller's reliability. The State also argued that information known to the dispatcher could be imputed to the officers. The trial court overruled the objection, subject to reconsideration after hearing the tape.

The tape was not transcribed but is included in the record on appeal. On the tape, a female states she is calling to report a drunk driver. The caller stated the driver, who is in a green Chevy 4x4 with license plates 2377GJ, is "going to be on Route 16" heading east. The caller then states, "They are drunk!" The caller indicated "they just [sic] actually just left here." The 9-1-1 operator, Brazzell, asked for the caller's identity. The caller gave her name as Melissa from Crestline. Melissa stated "they" dropped off a dog that was "put down." Melissa again stated, "They are drunk!" and that they did not need to be driving. Brazzell asked Melissa whether she knew the persons' identities. Melissa stated the driver was James Ewing and that "they" lived in Paris or around that area. Melissa then

stated that they were getting ready to turn onto Route 16 and repeated that they did not need to be driving.  Melissa also repeated the car identification information.

The tape also contains the dispatch of the information to "Lincoln 88."  Brazzell reported he had just received a report of a possible "10-55" from Crestline.  Brazzell stated that the subject came in to leave an animal there and "they were extremely intoxicated."  Brazzell stated the two male subjects were just leaving Crestline, heading eastbound on Route 16, in a green Chevrolet pickup.  Brazzell reported the men resided in Paris and would probably travel through Charleston.  The tape contains transmissions apparently between dispatch and various police officers, including the inquiry Lieutenant Pauls testified he made to confirm that the report was made by an employee of Crestline.  It is unclear from the tape whether Brazzell also gave the license plate number.

After hearing the arguments of counsel, the trial court took the matter under advisement.  On February 21, 2007, the court entered the following docket entry:

> "The [c]ourt finds the facts and evi-
> dence in this case to be analogous to the
> facts and evidence in Village of Mundelein v.
> Minx, 352 Ill. App. 3d 216, *** 815 N.E.2d
> 965 [(2004).]  The citizen-informant in the
> case before the court did have an indicia of
> reliability due to the fact that she identi-

fied herself and provided some details about the [defendant's] vehicle. The information provided by the citizen-informant was not, however, specific enough to justify an investigatory stop. In addition, the arresting officers did not witness any behavior by the [defendant] to corroborate the information provided by the citizen-informant. Based upon the totality of the circumstances in this case, the court finds that the arresting officers lacked reasonable suspicion to believe that the defendant had committed a crime. Accordingly, the [defendant's] [m]otion to *** [s]uppress [e]vidence and [m]otion to [r]escind [s]tatutory [s]ummary [s]uspension are granted."

This appeal followed.

## II. ANALYSIS

On appeal, the State argues the police lawfully stopped defendant because the 9-1-1 call gave the police reasonable suspicion to believe that defendant was driving under the influence. As such, the State argues, this court should reverse the trial court's order granting the motion to suppress evidence and the petition to rescind the statutory summary suspension.

## A. Trial Court Erred by Granting Defendant's Motion To Suppress Evidence

### 1. Standard of Review

The State argues this court should reverse the trial court's factual determinations only if they are against the manifest weight of the evidence but should review the ultimate legal questions of whether reasonable suspicion existed and whether the evidence should have been suppressed de novo. At oral argument, defendant conceded the State's position is correct.

Reviewing a trial court's ruling on a motion to suppress involves mixed questions of fact and law. People v. Gherna, 203 Ill. 2d 165, 175, 784 N.E.2d 799, 805 (2003). On review, this court gives great deference to the trial court's factual findings and will reverse those findings only if they are against the manifest weight of the evidence. Gherna, 203 Ill. 2d at 175, 784 N.E.2d at 805. "This deferential standard of review is grounded in the reality that the [trial] court is in a superior position to determine and weigh the credibility of the witnesses, observe the witnesses' demeanor, and resolve conflicts in their testimony." People v. Pitman, 211 Ill. 2d 502, 512, 813 N.E.2d 93, 100-01 (2004). However, we review de novo the trial court's legal determination of whether suppression is warranted under those facts. Gherna, 203 Ill. 2d at 175, 784 N.E.2d at 805.

## 2. Terry Stops Are Permissible Based Upon Reliable Information From a Third Party Informant

The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. The search and seizure language found in section 6 of article I of the Illinois Constitution is construed in a manner consistent with the United States Supreme Court's interpretation of the fourth amendment. Ill. Const. 1970, art I, §6; Fink v. Ryan, 174 Ill. 2d 302, 314, 673 N.E.2d 281, 288 (1996).

The temporary detention of an individual during a vehicle stop is a seizure within the meaning of the fourth amendment. People v. Hall, 351 Ill. App. 3d 501, 503, 814 N.E.2d 1011, 1014 (2004). In Terry, the United States Supreme Court created a limited exception to the requirement that seizures be supported by probable cause. Florida v. Royer, 460 U.S. 491, 498, 75 L. Ed. 2d 229, 236-37, 103 S. Ct. 1319, 1324 (1983). Under the standards set forth in Terry, an officer may briefly detain and question individuals to investigate possible criminal behavior if "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion" are present. Terry, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880. This standard is impossible to define with precision. Ornelas v. United States, 517 U.S. 690, 695, 134 L. Ed. 2d 911, 918, 116 S. Ct. 1657, 1661 (1996). However, the United States Supreme Court has held that the level of suspicion

- 9 -

necessary to justify a detention under the <u>Terry</u> standard is "considerably less than proof of wrongdoing by a preponderance of the evidence." <u>United States v. Sokolow</u>, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10, 109 S. Ct. 1581, 1585 (1989).

A police officer "may initiate a <u>Terry</u> stop based on information provided by a third party." <u>People v. Shafer</u>, 372 Ill. App. 3d 1044, 1049, 868 N.E.2d 359, 362-63 (2007).  However, the information must be reliable and allow "an officer to reasonably infer that a person was involved in criminal activity." <u>People v. Jackson</u>, 348 Ill. App. 3d 719, 729, 810 N.E.2d 542, 553 (2004).  That is, the "tip [must] be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." <u>Florida v. J.L.</u>, 529 U.S. 266, 272, 146 L. Ed. 2d 254, 261, 120 S. Ct. 1375, 1379 (2000).

When considering whether an informant's tip supports an investigatory stop, courts look at the totality of the circumstances. <u>People v. Nitz</u>, 371 Ill. App. 3d 747, 751, 863 N.E.2d 817, 821 (2007).  An anonymous tip, suitably corroborated, may provide reasonable suspicion so long as the information exhibits "'sufficient indicia of reliability.'" <u>J.L.</u>, 529 U.S. at 270, 146 L. Ed. 2d at 260, 120 S. Ct. at 1378, quoting <u>Alabama v. White</u>, 496 U.S. 325, 327, 110 L. Ed. 2d 301, 306, 110 S. Ct. 2412, 2414 (1990).

### 3. <u>This</u> <u>Court's</u> <u>Recent</u> <u>Decision</u> <u>in</u> <u>Shafer</u> <u>Found</u> <u>a</u> <u>Terry</u> <u>Stop</u> <u>Proper</u> <u>Based</u> <u>upon</u> <u>a</u> <u>Report</u> <u>of</u> <u>a</u> <u>Drunk</u> <u>Driver</u> <u>by</u> <u>a</u> <u>Third</u> <u>Party</u>

The trial court decided this case based on the Second

- 10 -

District decision in <u>Minx</u>, 352 Ill. App. 3d 216, 815 N.E.2d 965. That case involved another driver calling the police department to report that the defendant, driving a Mercury Marquis with registration number 3836, was driving recklessly. <u>Minx</u>, 352 Ill. App. 3d at 218, 815 N.E.2d at 968. The appellate court found that while the caller had an indica of reliability, the caller lacked details. <u>Minx</u>, 352 Ill. App. 3d at 222, 815 N.E.2d at 971-72. That is, while the caller reported the defendant was driving "recklessly," he failed to indicate what observations led him to that conclusion. <u>Minx</u>, 352 Ill. App. 3d at 222, 815 N.E.2d at 971. Therefore, the appellate court found that the officer was not justified in conducting an investigatory stop. <u>Minx</u>, 352 Ill. App. 3d at 222, 815 N.E.2d at 972.

However, this case is more analogous to this court's recent decision in <u>Shafer</u>, 372 Ill. App. 3d 1044, 868 N.E.2d 359, decided after the trial court's decision herein. In <u>Shafer</u>, this court addressed the issue of a <u>Terry</u> stop based on information provided by an independent third party. A Wendy's employee called the police to report an intoxicated person causing a disturbance in the restaurant's drive-thru. <u>Shafer</u>, 372 Ill. App. 3d at 1047, 868 N.E.2d at 361. A police officer responded to the location and saw a car leaving the Wendy's parking lot as he arrived. <u>Shafer</u>, 372 Ill. App. 3d at 1047, 868 N.E.2d at 361. The officer stopped the car shortly after it left the parking lot. <u>Shafer</u>, 372 Ill. App. 3d at 1047, 868 N.E.2d at 361. The officer did not see any traffic violations before stopping the

car.  Shafer, 372 Ill. App. 3d at 1047, 868 N.E.2d at 361.  After effectuating the stop, the officer had a difficult time understanding the defendant and noticed a strong smell of alcohol on defendant's breath.  Shafer, 372 Ill. App. 3d at 1046, 868 N.E.2d at 361.  The officer arrested defendant for DUI.  Shafer, 372 Ill. App. 3d at 1047, 868 N.E.2d at 361.

The trial court denied the defendant's petition to rescind his statutory suspension, and this court affirmed.  Shafer, 372 Ill. App. 3d at 1055, 868 N.E.2d at 367.  In doing so, this court found the telephone tip was reliable and provided the police officer with the requisite quantum of suspicion to justify the stop.  Shafer, 372 Ill. App. 3d at 1054-55, 868 N.E.2d at 367.

Specifically, the court concluded that "informant's tips regarding possible incidents of drunk driving require less rigorous corroboration than tips concerning matters presenting less imminent danger to the public."  Shafer, 372 Ill. App. 3d at 1053, 868 N.E.2d at 366.  This court first noted that the call from a Wendy's employee was not an "anonymous" tip.  Shafer, 372 Ill. App. 3d at 1054, 868 N.E.2d at 366-67.  "[A]n emergency call to police should not be viewed as an 'anonymous' tip or [be viewed] with the skepticism applied to tips provided by confidential informants."  Shafer, 372 Ill. App. 3d at 1054, 868 N.E.2d at 367.  Although this court in Shafer held that because the call from Wendy's was to a police emergency line, that call did not constitute an "anonymous tip" (Shafer, 372 Ill. App. 3d at 1054,

868 N.E.2d at 367), we nonetheless cited with approval the factors for evaluating whether an anonymous tip gives rise to reasonable suspicion as articulated by the Supreme Court of New Hampshire in State v. Sousa, 151 N.H. 297, 303-04, 855 A.2d 1284, 1290 (2004):

> "'First, whether there is a "sufficient quantity of information" such as the vehicle's make, model, license plate number, location and bearing, and "similar innocent details" so that the officer may be certain that the vehicle stopped is the one the tipster identified. [Citation.] Second, the time interval between the police receiving the tip and the police locating the suspect vehicle. [Citation.] Third, whether the tip is based upon contemporaneous eyewitness observations. [Citations.] Fourth, whether the tip is sufficiently detailed to permit the reasonable inference that the tipster has actually witnessed an ongoing motor vehicle offense.'" Shafer, 372 Ill. App. 3d at 1050, 868 N.E.2d at 363, quoting Sousa, 151 N.H. at 303-04, 855 A.2d at 1290.

After reviewing those factors, the Shafer court determined that the tip (in addition to not being "anonymous") was also reliable. Shafer, 372 Ill. App. 3d at 1054, 868 N.E.2d at 367. Moreover,

- 13 -

this court rejected the defendant's claim that the police officer acted solely upon conclusory and uncorroborated opinions. This court concluded "that the telephone tip provided [the officer] with the requisite quantum of suspicion to justify the Terry stop of defendant's car." Shafer, 372 Ill. App. 3d at 1055, 868 N.E.2d at 367.

### 4. The Terry Stop in This Case Was Proper

In this case, the trial court found the caller had an indicia of reliability but the tip was not specific enough to justify an investigatory stop. We agree that the caller had an indicia of reliability but disagree that the tip lacked sufficient detail.

This court must first address whether to consider only the information conveyed to the police officers or whether additional information given to the 9-1-1 dispatcher, but not conveyed to the officers, can be imputed to the police officers. The State makes no distinction between this information in its appellant's brief.

Under the "collective- or imputed-knowledge" doctrine, information known to all of the police officers acting in concert can be examined when determining whether the officer initiating the stop had reasonable suspicion to justify a Terry stop. People v. Fenner, 191 Ill. App. 3d 801, 806, 548 N.E.2d 147, 151 (1989); see also People v. Crowell, 94 Ill. App. 3d 48, 50, 418 N.E.2d 477, 478 (1981) (holding that "an arresting officer may rely on the knowledge of officers who command him or work with

him to make the arrest"). The focus is on whether the officer on whose instructions or information the actual searching or arresting officers relied had reasonable suspicion to search or probable cause to arrest. See United States v. Hensley, 469 U.S. 221, 231, 83 L. Ed. 2d 604, 613, 105 S. Ct. 675, 681 (1985). However, if the officer initiating the stop relies on a dispatch, the officer who directed the dispatch must have possessed sufficient facts to establish probable cause to make the arrest. See People v. Crane, 244 Ill. App. 3d 721, 724-25, 614 N.E.2d 66, 69 (1993) (finding the arresting police officers lacked probable cause to arrest the defendant where the record contained no evidence as to the source of the dispatcher's information and the police officer with knowledge did not give that information to anyone else and was not acting in concert with the arresting officers).

The Illinois courts have yet to address whether information known to a civilian 9-1-1 dispatcher may be imputed to the police officers. Several federal circuits have extended the collective-knowledge doctrine to situations involving a dispatch by a civilian 9-1-1 operator as opposed to another police officer. See United States v. Fernandez-Castillo, 324 F.3d 1114, 1118 (9th Cir. 2003); United States v. Kaplansky, 42 F.3d 320, 327 (6th Cir. 1994); United States v. Cutchin, 956 F.2d 1216, 1217-18 (D.C. Cir. 1992).

The Second Circuit, however, has disagreed, finding that whether the knowledge may be imputed depends upon whether the 9-1-1 operator had sufficient training to assess the informa-

tion in terms of reasonable suspicion.  See <u>United States v.</u> <u>Colon</u>, 250 F.3d 130, 138 (2d Cir. 2001) (holding that the police officer had insufficient information from which to conclude that a stop and frisk was appropriate wherein the civilian 9-1-1 operator lacked the training to assess the information in terms of reasonable suspicion and failed to convey sufficient information to the police officer); see also <u>United States v. Wehrle</u>, No. CR406-333, slip op. at 4 (February 14, 2007), ___ F.3d ___, ___, 2007 WL 521882 (S.D. Ga. 2007) (holding that information known to the civilian 9-1-1 dispatcher could be imputed to the police officer where the dispatcher had specialized law-enforcement training).

We conclude that the cases that hold the imputed-knowledge doctrine includes information contained in calls to 9-1-1 operators are more persuasive than those holding to the contrary.  However, even if we were not so persuaded, we would still conclude that the information communicated to the police officers provided them with sufficient information to form reasonable suspicion.  The dispatcher gave the officers the make, model, color, and license plate of the vehicle.  The dispatcher told the officers the vehicle contained two male occupants and would be leaving Crestline traveling east on Route 16.  The dispatcher further informed the officers that the report of a possible drunk driver was made by an employee of Crestline and that the individual had just left his animal at Crestline.

An informant tip received by telephone may form the

basis of a <u>Terry</u> stop if the tip is reliable and the tip allows the officer to reasonably infer that a person was involved in criminal activity. See <u>Shafer</u>, 372 Ill. App. 3d at 1049, 868 N.E.2d at 362-63. The factors to consider include (1) the quantity and detail of the information such that the officer may be certain that the vehicle stopped is the one identified by the caller; (2) the time interval between the tip and the police locating the vehicle; (3) whether the tip is based on contemporaneous eyewitness observations; and (4) whether the tip has sufficient detail to permit the reasonable inference that the tipster actually witnessed what she described. <u>Shafer</u>, 372 Ill. App. 3d at 1050, 868 N.E.2d at 363, quoting <u>Sousa</u>, 151 N.H. at 303-04, 855 A.2d at 1290.

Applying the factors set forth in <u>Shafer</u>, and given the less-rigorous corroboration needed for informant's tips regarding possible incidents of drunk driving, the telephone tip provided the officers with the requisite quantum of suspicion to justify the <u>Terry</u> stop.

Notably, the caller was not anonymous, as she gave her name and from where she was calling. Moreover, calls made to a police emergency number are considered more reliable than other calls because the police have enough information to identify the caller even if the caller does not give his or her name. See <u>Shafer</u>, 372 Ill. App. 3d at 1050, 868 N.E.2d at 363-65 (citing numerous cases and noting that 9-1-1 callers are not truly anonymous because the police can now identify the caller, and the

- 17 -

caller subjects himself or herself to criminal charges if he or she makes a false report).

Moreover, the factors articulated in Shafer exist here and support the conclusion that the tip was reliable and gave the officers reasonable suspicion to justify the stop. First, the caller provided sufficient details about the car, including the make, model, color, and license plate, and the fact that the vehicle was traveling eastbound on Route 16 with two male occupants. In addition, Brazzell reported to the officers that the vehicle was occupied by two males. This gave the officers a sufficient basis to believe they were pulling over the car the caller reported.

Second, the time interval between the call and when the officers located defendant's vehicle was short. Brazzell testified the call came in at approximately 12:45 p.m. The ticket issued by Officer Sanders contains the time 12:56 p.m. Moreover, Officer Sanders testified that after hearing the dispatch, he got in his squad car, headed east, and waited for the vehicle at Harrison and Route 16. He saw the vehicle within a matter of seconds. Lieutenant Pauls also appeared to have located defendant's vehicle quickly.

Third, the tip was based on contemporaneous eyewitness observations. Brazzell told the officers that an employee of Crestline made the report and that the defendant was just leaving Crestline. While the record is silent as to what defendant did before driving off, the caller clearly made the report as she

- 18 -

observed the incident.  Fourth, the tip was sufficiently detailed to permit a reasonable inference that the tipster actually witnessed what she described.  Brazzell informed the officers that the caller, an employee of Crestline, reported that defendant left his animal at Crestline and was extremely intoxicated.  A reasonable inference can be drawn that the caller, as an employee of Crestline, would have had ample opportunity to observe defendant as he left his animal there.

As was the case in Shafer, the record is silent as to just what defendant did to cause the Crestline employee enough concern to the call the police.  See Shafer, 372 Ill. App. 3d at 1054-55, 868 N.E.2d at 367.  However, because of the caller's position as an employee at Crestline, she would have been in a position to observe defendant's speech, odor, and gait.  See Shafer, 372 Ill. App. 3d at 1054-55, 868 N.E.2d at 367 (proximity between customer and employee at a drive-thru window supported the reliability of the tipster's observations as the employee would be in a position to observe the defendant's speech and odor).  In addition, it is reasonable to conclude that a person can determine when another person might be intoxicated.  See, e.g., People v. Workman, 312 Ill. App. 3d 305, 310, 726 N.E.2d 759, 762-63 (2000) (noting that "even a layperson is competent to testify regarding a person's intoxication from alcohol, because such observations are within the competence of all adults of normal experience").

As in Shafer, an identified (or identifiable) citizen

called a police emergency number from his or her workplace to report that a drunk driver had just driven away. In both cases, the citizens were sufficiently concerned about the condition of these drivers that the citizens overcame any reluctance to call the police, and they apparently did so out of a sense of the danger the drunk drivers posed to the community. For these citizens to call the police is truly extraordinary. When receiving such a call, the police may properly conclude that the circumstances must be pretty serious (at least in the mind of the citizen calling) for that citizen to make such a call, thus adding to the credibility the police may give to the identified (or identifiable) caller. Viewing the evidence in this light would be consistent with Supreme Court of Illinois doctrine that the central issue in determining whether a Terry stop was appropriate is "'whether the information, taken in its totality, and interpreted not by technical legal rules but by factual and practical commonsense considerations, would lead a reasonable and prudent person to believe that the person stopped had committed an offense.' [Citation.]" People v. Ledesma, 206 Ill. 2d 571, 583, 795 N.E.2d 253, 262 (2003), overruled on other grounds by Pittman, 211 Ill. 2d at 513, 813 N.E.2d at 101.

Because the tip was reliable and provided the officers with the requisite quantum of suspicion to justify the Terry stop, the trial court erred by granting defendant's motion to suppress the evidence. As previously noted, the trial court did not have the benefit of this court's decision in Shafer when it

- 20 -

addressed the issue. Instead, the trial court relied on the Minx case. This court finds the Minx case both distinguishable from Shafer and the instant case and in error. In particular, the tipster in Minx reported the defendant's car was driving recklessly. Minx, 352 Ill. App. 3d at 218, 815 N.E.2d at 968. While reckless driving may be a result of a drunk driver, it may also be a fleeting occurrence. An intoxicated driver remains impaired as he or she continues to drive. In fact, as noted in Shafer, an intoxicated driver presents a more imminent danger than many other crimes--such as concealment of a handgun--and requires less corroboration of an informant's tip. Shafer, 372 Ill. App. 3d at 1052, 868 N.E.2d at 365.

Moreover, the tipster in Minx had no personal contact with the defendant. Here, the court could infer that because of the close contact between the tipster and defendant, the tipster had the opportunity to observe defendant's speech, odor, and gait to draw the conclusion that defendant was intoxicated.

Regardless, Minx is simply wrong. Where a nonanonymous caller reports a reckless, erratic, or drunk driver, the police must be permitted to stop the reported vehicle without having to question the caller about the specific details that led him or her to call so long as the nonanonymous tip has a sufficient indicia of reliability. Reckless and erratic drivers are likely impaired, and such drivers present an imminent danger to other motorists. A police officer should not have to wait to observe such driver commit a traffic violation or obtain specific details

- 21 -

supporting the caller's conclusion before stopping the reported vehicle.

### B. Trial Court Erred by Granting the Petition To Rescind the Statutory Summary Suspension

Generally, a trial court's decision on a petition to rescind a statutory summary suspension will not be reversed unless it is against the manifest weight of the evidence. People v. Kavanaugh, 362 Ill. App. 3d 690, 695, 840 N.E.2d 807, 811 (2005). However, de novo review is appropriate where, as here, neither the facts nor the credibility of the witnesses is questioned. Shafer, 372 Ill. App. 3d at 1054, 868 N.E.2d at 366. For the same reasons the trial court erred by granting the motion to suppress evidence, the court also erred by granting defendant's petition to rescind his statutory summary suspension.

### III. CONCLUSION

For the reasons stated, we reverse the trial court's orders granting the motion to suppress evidence and the petition to rescind the statutory summary suspension and remand for further proceedings.

Reversed and remanded.

STEIGMANN, P.J., and TURNER, J., concur.