# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Hansen, 2012 IL App (4th) 110603**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. SETH R. HANSEN, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-11-0603 |
| Filed | April 3, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for driving under the influence, the trial court's grant of defendant's motion to "quash arrest" based on the finding that the arresting officer lacked probable cause to stop defendant was reversed and the cause was remanded for further proceedings, since the factors set forth in *Shafer* were satisfied when a call was made to an emergency police number that a truck was doing "donuts" in the middle of a road, the call was not anonymous, the driver's conduct demonstrated a willful and wanton disregard for the safety of persons and property, the information provided was sufficiently detailed and quantitative to assure that the officer was stopping the right truck, the time interval between the tip and the stop was short, the tip was based on contemporaneous eyewitness observations, and a credible report of drunk driving should preclude a requirement that the arresting officer observe a traffic violation before making a stop; furthermore, defendant should have entitled his motion a motion to suppress evidence, rather than to "quash arrest." |
| Decision Under Review | Appeal from the Circuit Court of Jersey County, No. 11-DT-9; the Hon. Eric S. Pistorius, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Benjamin L. Goetten, State's Attorney, of Jerseyville (Patrick Delfino, Robert J. Biderman, and Luke McNeill, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| | Laef N. Lorton, of Wittman & Lorton, P.C., of Jerseyville, for appellee. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion. |
| | Justices Appleton and Knecht concurred in the judgment and opinion. |

## OPINION

¶ 1    On February 17, 2011, police arrested defendant, Seth R. Hansen, for driving under the influence (DUI) (625 ILCS 5/11-501(a)(2) (West 2010)). Prior to trial, defendant filed a petition to rescind his statutory summary suspension and a motion to "quash arrest." The trial court granted defendant's petition and motion, finding that the arresting officer lacked reasonable suspicion to stop defendant's truck.

¶ 2    The State appeals, arguing that the trial court erred by granting defendant's petition and motion. We reverse and remand.

¶ 3                    I. BACKGROUND

¶ 4    In February 2011, defendant filed a petition to rescind the statutory summary suspension, arguing that Deputy Kevin Ayres did not have reasonable suspicion to effectuate the stop that later led to his being arrested for DUI because Ayres did not observe defendant committing a traffic violation. He further argued that the telephone call to dispatch was not sufficiently reliable to support an investigatory stop.

¶ 5    The following background was garnered from the March 2011 hearing on defendant's petition to rescind, at which (1) Ayres and defendant testified, and (2) the trial court admitted into evidence the contents of the 9-1-1 dispatch recording.

¶ 6    On February 17, 2011, at approximately 5:39 p.m., 12-year-old Carson Smith placed a 9-1-1 call from Fieldon, Illinois, reporting that a truck was doing "donuts" in the road–that is, the truck was being driven "quickly in repeated, tight circles" (see *Chamblin v. State*, 994 So. 2d 1165, 1166 (Fla. Dist. Ct. App. 2008) (*per curiam*) (defining the phrase "spinning a donut")). Carson identified the vehicle as a single-cab, black, GMC truck, with "big rims,"

a black dog in the back, and a sticker on the rear window reading "All Types Landscaping." Carson also indicated that two men were in the front of the truck, adding that a "four-year-old" was in the backseat. After learning Carson was a minor, the 9-1-1 dispatcher directed Carson to put his mother on the telephone.

¶ 7    Pam Smith, Carson's mother, told the dispatcher that a black truck was "hot rodding" up and down the street and doing "donuts." She said she "heard the truck speeding up *** [and] came outside to see what was going on." Pam confirmed that the phrase "All Types Landscaping" was written on the truck's rear window. She further explained that (1) a black dog was in the back of the truck and (2) two men were in the cab. Pam doubted, however, a child was in the backseat. She told the dispatcher that she thought the vehicle was a black Ford pickup. The dispatcher asked Pam to clarify the make and model of the truck because Carson had identified it as a black GMC. Pam responded "the boys said a GMC, I wouldn't know." Finally, she reported that the men in the truck had been "running up and down through Fieldon," were "screaming and hollering," and that she "didn't know if they had been drinking."

¶ 8    Shortly thereafter, the dispatcher contacted Ayres and relayed the information that Carson and Pam had reported. After the first call to dispatch, but before defendant was stopped, the dispatcher received a second call from Carson with information that the truck had left Fieldon and was heading toward Jerseyville, Illinois, on Route 16. This information was also relayed to Ayres.

¶ 9    Ayres observed a black GMC truck traveling eastbound on Route 16, coming from the direction of Fieldon, with a black dog in the back, and the phrase "All Types Landscaping" written across the rear window. The truck did not have a backseat and defendant was the sole occupant. Ayres did not observe any other vehicles in the area that fit the description provided by dispatch. Ayres testified that he stopped defendant at approximately 5:45 p.m. (Defendant's ticket also indicated that he was stopped at 5:45 p.m.) After Ayres effectuated the stop, he detected a strong smell of alcohol emanating from defendant's breath and vehicle. Ayres subsequently arrested defendant for DUI.

¶ 10    On this evidence, the trial court granted defendant's petition, finding that (1) the time delay between the first and second 9-1-1 calls and (2) the presence of one individual in the truck instead of two as relayed in the calls supported the conclusion that the four factors for determining the reliability of an informant's tip as outlined in *People v. Shafer*, 372 Ill. App. 3d 1044, 868 N.E.2d 359 (2007), had not been met.

¶ 11    Defendant also filed a motion to "quash arrest." Regarding that motion, the trial court concluded that based upon its finding that Ayres did not have reasonable suspicion to stop defendant, any evidence that resulted from the stop would be "considered fruit of the poisonous tree." Because the court found that the State could not present any other evidence supporting its DUI claim, the court granted defendant's motion.

¶ 12    This appeal followed.


¶ 13                                II. ANALYSIS

¶ 14    The State appeals, arguing that the trial court erred by granting defendant's petition and

motion. Specifically, the State contends that (1) the quantity and detail of the information was such that Ayres could be certain that the vehicle stopped was the vehicle identified by Carson and Pam, (2) the time interval between the dispatch calls and the stop was sufficiently brief, (3) the tip was based on multiple contemporaneous eyewitness observations, and (4) the tip was sufficiently detailed to permit the reasonable inference that Carson and Pam actually witnessed what they described–namely, an ongoing motor vehicle offense. See *Shafer*, 372 Ill. App. 3d at 1050, 868 N.E.2d at 363; *People v. Ewing*, 377 Ill. App. 3d 585, 593, 880 N.E.2d 587, 594 (2007). We agree.

¶ 15                                    A. Standard of Review

¶ 16       Generally, a reviewing court will not reverse a trial court's decision on a petition to rescind a statutory summary suspension unless it is against the manifest weight of the evidence. *Shafer*, 372 Ill. App. 3d at 1053-54, 868 N.E.2d at 366. On appeal from a trial court's ruling on a motion to quash and suppress, the reviewing court "will accord great deference to the trial court's factual findings and will reverse those findings only if they are against the manifest weight of the evidence." *People v. Close*, 238 Ill. 2d 497, 504, 939 N.E.2d 463, 467 (2010). However, the trial court's ultimate decision to grant or deny the motion is subject to *de novo* review. *Id.* The same standard of review applies to appeals from a trial court's ruling regarding a petition to rescind statutory summary suspension. *Id.*

¶ 17                              B. This Court's Decision in *Shafer*

¶ 18       In *Shafer*, the police received a call with information that an intoxicated person was causing a disturbance at the drive-thru window of a Wendy's restaurant. *Shafer*, 372 Ill. App. 3d at 1047, 868 N.E.2d at 361. The caller identified himself or herself as an employee of Wendy's. *Id.* This information was dispatched to a police officer. *Id.* That officer had no other information about the possible drunk driver or the Wendy's employee. *Id.* The officer quickly responded and arrived at the only Wendy's location in the area. *Id.* Upon arrival, the officer activated his overhead lights and stopped the vehicle. *Id.* The officer observed a Wendy's bag in the front seat of the car and encountered the strong smell of alcohol. *Id.* The officer subsequently arrested the defendant for DUI. *Id.*

¶ 19       The defendant filed a petition to rescind statutory summary suspension. *Shafer*, 372 Ill. App. 3d at 1046, 868 N.E.2d at 361. The trial court denied the defendant's petition, finding the officer had reasonable suspicion to justify the stop. *Shafer*, 372 Ill. App. 3d at 1048-49, 868 N.E.2d at 362. The defendant appealed, arguing that the court erred by denying his petition because the officer "did not have a reasonable, articulable suspicion to justify a *Terry* stop." *Shafer*, 372 Ill. App. 3d at 1046, 868 N.E.2d at 361. We affirmed. *Id.*

¶ 20       This court held that an officer may initiate a *Terry* stop when that officer is provided with information by a third party which is reliable and allows the officer to " 'reasonably infer that a person was involved in criminal activity.' " *Shafer*, 372 Ill. App. 3d at 1049, 868 N.E.2d at 362-63 (quoting *People v. Jackson*, 348 Ill. App. 3d 719, 729, 810 N.E.2d 542, 553 (2004)). One factor that affects the reliability of a tip is whether that tip is anonymous or nonanonymous. *Shafer*, 372 Ill. App. 3d at 1050, 868 N.E.2d at 364. In *Shafer*, we concluded

that because calls made to emergency numbers are nonanonymous, they are more reliable. *Shafer*, 372 Ill. App. 3d at 1054, 868 N.E.2d at 367.

¶ 21   In so concluding, we further explained that the informant's tip in *Shafer* bore an initial degree of reliability based solely on the fact that it was nonanonymous. See *Shafer*, 372 Ill. App. 3d at 1054, 868 N.E.2d at 366-67 (informant's tip was not anonymous because it was made to an emergency police number by a caller who identified himself or herself as an employee of Wendy's). However, we also adopted a four-factor test applicable to anonymous tips that would further assist trial courts in determining when a tip has "sufficient indicia of reliability to establish the requisite quantum of suspicion" to justify a *Terry* stop. *Shafer*, 372 Ill. App. 3d at 1053-54, 868 N.E.2d at 366-67.

¶ 22   Those factors included (1) whether there was a " ' "sufficient quantity of information" ' " to allow the officer to be certain that the vehicle stopped was the one identified by the tipster; (2) the time interval between the police locating the suspect vehicle and when the information was first relayed to the police; (3) whether the tip was " 'based upon contemporaneous eyewitness observations' "; and (4) whether the tip was " 'sufficiently detailed to permit the reasonable inference that the tipster has actually witnessed an ongoing motor vehicle offense.' " *Shafer*, 372 Ill. App. 3d at 1050, 868 N.E.2d at 363 (quoting *State v. Sousa*, 855 A.2d 1284, 1290 (N.H. 2004)).

¶ 23   After reviewing these factors, we concluded that the tip in *Shafer*, in addition to not being anonymous, was reliable. *Shafer*, 372 Ill. App. 3d at 1054, 868 N.E.2d at 367. First, the timing of the tip provided a sufficient basis for the officer to believe he had identified and stopped the correct vehicle. *Id.* Second, the time between the officer's receiving the tip and stopping the defendant's vehicle was short. *Id.* The tip was based on a contemporaneous eyewitness observation by a Wendy's employee who had a hand-to-hand exchange with the defendant. *Shafer*, 372 Ill. App. 3d at 1054-55, 868 N.E.2d at 367. Finally, the tip was sufficiently detailed to permit a reasonable inference that the tipster had actually witnessed the defendant create a disturbance at the drive-thru window and that he was intoxicated. *Shafer*, 372 Ill. App. 3d at 1054, 868 N.E.2d at 367.

¶ 24   We further noted in *Shafer* that the record did not contain an explicit statement from the officer as to why he stopped the vehicle. *Shafer*, 372 Ill. App. 3d at 1055, 868 N.E.2d at 368. Relying on a United States Supreme Court decision, we indicated that whether the officer stopped the vehicle because of suspicion of drunk driving or because of the report of a disturbance was not relevant. *Shafer*, 372 Ill. App. 3d at 1056, 868 N.E.2d at 368; see *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (concluding "that an arresting officer's state of mind (except for the facts he knows) is irrelevant to the existence of probable cause" and "his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause"). We explained that this probable cause analysis also applied to the question of reasonable suspicion to justify a *Terry* stop. *Shafer*, 372 Ill. App. 3d at 1056, 868 N.E.2d at 368.

¶ 25                    C. This Court's Decision in *Ewing*

¶ 26   Shortly after we published our decision in *Shafer*, we were faced with a similar

-5-

circumstance. In *Ewing*, a 9-1-1 dispatch center received information of a possible drunk driver. *Ewing*, 377 Ill. App. 3d at 588-89, 880 N.E.2d at 591. This information was dispatched to area officers. *Ewing*, 377 Ill. App. 3d at 588, 880 N.E.2d at 591. The caller provided the name of the defendant, the make, model, color, and license plate number of a truck, which direction the defendant was driving, that the defendant was intoxicated, and that there was another male in the vehicle with the defendant. *Ewing*, 377 Ill. App. 3d at 588-89, 880 N.E.2d at 591. The caller identified herself as Melissa, an employee of Crestline Veterinary Clinic, and explained that the defendant had just left her place of employment. *Ewing*, 377 Ill. App. 3d at 588-89, 880 N.E.2d at 591.

¶ 27    The defendant filed a motion to suppress evidence and a petition to rescind statutory summary suspension. *Ewing*, 377 Ill. App. 3d at 586, 880 N.E.2d at 589. The trial court granted the defendant's motion and petition and found that the information provided by the tipster was not specific enough to justify a *Terry* stop, even though it found the caller "ha[d] an indicia of reliability." (Internal quotation marks omitted.) *Ewing*, 377 Ill. App. 3d at 589, 880 N.E.2d at 591. The State appealed. *Ewing*, 377 Ill. App. 3d at 589, 880 N.E.2d at 592.

¶ 28    After applying the factors outlined in *Shafer*, we reversed the trial court's decision, concluding that the tip was reliable and that the officers had reasonable suspicion to justify a stop. *Ewing*, 377 Ill. App. 3d at 595, 880 N.E.2d at 595-96. Specifically, we concluded that the caller was not anonymous, given that she called a police emergency number, gave her name, and provided her location. *Ewing*, 377 Ill. App. 3d at 595, 880 N.E.2d at 596. Moreover, the caller provided sufficient details–the truck's color, make, model, plate number, where the truck was going, and the number of occupants–to conclude that the officers had a sufficient basis to believe they were stopping the identified vehicle. *Id.* The time interval between the call and the stop, approximately 11 minutes, was short. *Id.* The tip was based on a contemporaneous eyewitness observation by the caller and her "tip was sufficiently detailed to permit a reasonable inference that [she] actually witnessed what she described." *Ewing*, 377 Ill. App. 3d at 596, 880 N.E.2d at 596.

¶ 29    We added the following:

"Where a nonanonymous caller reports a reckless, erratic, or drunk driver, the police must be permitted to stop the reported vehicle without having to question the caller about the specific details that led him or her to call so long as the nonanonymous tip has a sufficient indicia of reliability." *Ewing*, 377 Ill. App. 3d at 597, 880 N.E.2d at 597-98.

We also reiterated our earlier conclusion in *Shafer*: an officer should not have to wait for the driver of such a vehicle to commit a traffic violation or observe the driver engaging in the reported behavior before stopping the identified vehicle. *Ewing*, 377 Ill. App. 3d at 597, 880 N.E.2d at 598.

¶ 30               D. The Second District's Recent Holding in *Smulik*

¶ 31    Recently, the Second District upheld a trial court's grant of a motion to quash arrest for DUI and motion to suppress evidence. *People v. Smulik*, 2012 IL App (2d) 110110, ¶ 1. In *Smulik*, the Oakbrook Terrace police received a dispatch concerning a possible DUI. *Smulik*, 2012 IL App (2d) 110110, ¶ 3. The complainant, a woman, reported that she had seen the

defendant consume wine and vodka at a bar, she thought the defendant was drunk, and she was following the defendant's vehicle. *Id.* She relayed information about the vehicle's make and model, license plate number, and location to the police. *Id.* The police located the defendant's vehicle parked at a gas station. *Id.* An officer approached the defendant's vehicle, observed that he had bloodshot eyes, and detected the smell of alcohol. *Id.* The officer then spoke with the woman, who had followed the defendant to the gas station. *Id.* After speaking with the woman, the officer returned to the defendant's vehicle and questioned whether he had been drinking. *Id.*

¶ 32    The defendant filed a motion to quash the arrest and a motion to suppress evidence. *Smulik*, 2012 IL App (2d) 110110, ¶ 1. The trial court granted the defendant's motions, and the State appealed. *Id.* The appellate court affirmed. *Id.*

¶ 33    The appellate court concluded that the tip was anonymous because the information was not provided through an emergency police number and the informant did not relay her name. *Smulik*, 2012 IL App (2d) 110110, ¶ 8. Thus, the Second District concluded, the reliability of the informant's tip depended upon the existence of corroborative details observed by the police. *Id.* The court concluded that such evidence was lacking. *Id.* The officer's "personal observations corroborated only noninculpatory aspects of the tip–that a vehicle fitting a certain description would be found at a particular location." *Smulik*, 2012 IL App (2d) 110110, ¶ 9.

¶ 34    Further, the Second District recognized that the corroboration standard has been relaxed in the case of drunk drivers because of the threat that such drivers pose to public safety. *Smulik*, 2012 IL App (2d) 110110, ¶ 11 (citing *Shafer*, 372 Ill. App. 3d at 1052-53, 868 N.E.2d at 367). However, the court found the relaxed standard did not apply in *Smulik* because the defendant's vehicle was parked, and the urgency associated with the need to stop a drunk driver in motion was not present. *Smulik*, 2012 IL App (2d) 110110, ¶ 11.

¶ 35                              E. The *Terry* Stop in This Case

¶ 36    In this case, the trial court found that the four factors in *Shafer* had not been met and granted defendant's petition to rescind the statutory summary suspension. Specifically, the court concluded "there is no suggestion of drunk driving or reckless driving, but rather someone spinning donuts *** [and] the less stringent standard does not apply." We do not agree that someone "spinning donuts" is not subject to a reckless driving charge, and after applying the factors in *Shafer*, we find the tips in this case had sufficient indicia of reliability to support a finding of reasonable suspicion.

¶ 37                              1. *Reckless Driving*

¶ 38    A person drives recklessly when he or she "drives any vehicle with a willful or wanton disregard for the safety of persons or property." 625 ILCS 5/11-503(a)(1) (West 2010). We view defendant's conduct in this case, doing "donuts," sufficiently deliberate to endanger persons and property. We do not agree with the trial court that doing "donuts" in the middle of the road does not rise to the level of reasonable suspicion that the perpetrator is engaging in reckless behavior. Carson reported that defendant "floored it going down the front of our

house, drifted, about hit my mom's car." He also said "they were speeding way too fast, fast over the speed limit." Further, Pam reported that the boys had been walking in the road with the dogs when the truck came down the road. Thus, if true, defendant's conduct demonstrated a willful and wanton disregard for the safety of persons and property.

¶ 39                                    2. *The Shafer Analysis*

¶ 40                              a. The Tip Was Not Anonymous

¶ 41    Initially, we conclude that the call was not anonymous, because it was made to an emergency police number and the callers identified themselves as Carson and Pam Smith. Information provided pursuant to an emergency call is more reliable than other calls. See *Shafer*, 372 Ill. App. 3d at 1050, 868 N.E.2d at 363-64. Compare *People v. Linley*, 388 Ill. App. 3d 747, 750, 903 N.E.2d 791, 796 (2009) ("[t]hat an informant has placed his or her anonymity at risk may be considered in assessing the reliability of the tip"), with *Smulik*, 2012 IL App (2d) 110110, ¶ 8 (where there is no evidence that the tipster contacted the police through an emergency number or provided his or her name, the tip must be considered anonymous, "and its reliability hinges on the existence of corroborative details observed by the police"). The nonanonymous nature of the tip in this case strengthens its reliability. The lack of anonymity, combined with the four *Shafer* factors, supports the conclusion that reasonable suspicion existed.

¶ 42                            b. Quantity and Detail of Information

¶ 43    First, the quantity and detail of the information that Pam and Carson provided was such that Ayres could be reasonably certain that he was stopping the truck described by the dispatcher. Both Carson and Pam informed the 9-1-1 operator that a black truck, with a black dog in the back, displaying the writing "All Types Landscaping" on the rear window, was doing "donuts" in the road. Pam identified the truck as a possible "Ford pickup." Carson, however, identified the truck as a black GMC, and the truck was in fact a black GMC. Further, a subsequent call indicated that defendant was driving toward Jerseyville on Route 16. Defendant was in fact headed in that direction on Route 16 when Ayres stopped him. All of this information, considered together, was sufficiently detailed and quantitative to assure Ayres could be certain he was stopping the complained-of truck.

¶ 44    Defendant posits, however, that the discrepancy in the number of people in the truck when the dispatch call was made and when defendant was stopped sheds doubt on whether the first *Shafer* factor was met. Carson told the dispatcher there were two men and a "four-year-old" child in the truck. Whereas, Pam indicated there were two men in the truck but she doubted whether a child was in the truck. When defendant's truck was stopped, he was the sole occupant.

¶ 45    Defendant claims that if two or three people were in the car when the report was made, the truck must have pulled over at some point and let people out. Therefore, defendant concludes that Ayres could not have known if the driver he stopped was the same person behind the wheel when the report was made. The trial court agreed with this argument and cited it as one of two reasons the *Shafer* factors were not met. In fact, during the hearing, the

court noted that the "number of the people in the vehicle I would think is somewhat significant." We disagree.

¶ 46    As we explained in *Ewing*, "[w]hen considering whether an informant's tip supports an investigatory stop, courts look at the totality of the circumstances." *Ewing*, 377 Ill. App. 3d at 591, 880 N.E.2d at 593. In light of the other quantitative and detailed information that Carson and Pam provided, the number of people in the truck was of little significance. It was possible for Ayres to accurately identify the truck without knowing the number of people in the vehicle. Additionally, it was the report of reckless driving that Ayres was investigating, not the person driving. The only way Ayres could have known if defendant was the driver was to initiate a stop and question the driver.

¶ 47                           c. Time Interval

¶ 48    Second, the time interval between the tips and the stop was short. Ayres testified that he stopped defendant at 5:45 p.m., only six minutes after the first call had been placed at 5:39 p.m. Defendant's ticket also indicated that he was stopped at 5:45 p.m. The trial court, however, found that the stop took place at 5:52 p.m., 12 minutes after the initial call. The court relied on the recordings of the dispatch calls in drawing its conclusion. The record is inconclusive as to whether the stop took place 6 minutes or 12 minutes after the first call. Nevertheless, regardless of whether the stop took place 6 minutes or 12 minutes after the initial call, our conclusion is the same–the time interval was in line with our decisions in *Shafer* and *Ewing*.

¶ 49    Apparently, the trial court concluded that the delay between the first call (reporting the erratic driving) and the second call (informing dispatch defendant was leaving town) was one of two reasons why the *Shafer* factors were not met. However, the court does not explain why a six-minute time delay between calls would render the information less reliable. We can only surmise that the court's concern was that the reckless driving had ceased or the second call indicating defendant was leaving town suggested an imminent danger to the public no longer existed. However, we draw the opposite conclusion based upon the facts of this case. The fact that Pam and Carson believed it necessary to make a second call to inform dispatch that defendant redirected his route leads us to conclude they continued to be concerned about defendant's reckless driving.

¶ 50                  d. Contemporaneous Eyewitness Observation

¶ 51    Third, the tip was based on contemporaneous eyewitness observations. As previously explained, Pam and Carson reported observing a truck doing "donuts" in the road. Pam explained she "heard the truck speeding up *** [and] came outside to see what was going on." The truck was "hot rodding through town." Pam also indicated the men in the truck were "screaming and hollering" and "she didn't know if they had been drinking."

¶ 52                          e. Sufficiently Detailed Tip

¶ 53    Fourth, the tip was sufficiently detailed to permit the reasonable inference that Carson

and Pam actually witnessed an ongoing traffic violation–namely, that they had observed a black truck, with a black dog, with the writing "All Types Landscaping," speeding down the road and doing "donuts."

¶ 54                    3. *Imminent Danger, Swift Intervention, and*
                          *Observation of a Traffic Violation*

¶ 55      Defendant also claims that no ongoing violation of reckless driving gave rise to imminent danger to the public that would require swift intervention. Thus, we should not utilize a less stringent standard of reasonable suspicion. Defendant cites *Shafer* for this proposition, asserting that an officer should follow a driver for a reasonable period of time if they are not " ' "running the risk of death or injury with every passing moment." ' " *Shafer*, 372 Ill. App. 3d at 1053, 868 N.E.2d at 366 (quoting *State v. Rutzinski*, 2001 WI 22, ¶ 35, 623 N.W.2d 516, quoting *State v. Boyea*, 765 A.2d 862, 867 (Vt. 2000)). Defendant misconstrues the quoted language. Placing it in the proper context, that quote dealt with the issue of a concealed weapon, not drunk or erratic driving.

¶ 56      In *Shafer*, we indicated that an officer should not have to observe a traffic violation before stopping a defendant after the officer has received a credible report of drunk or erratic driving. We did so after a survey and discussion of decisions that supported that conclusion. See *Shafer*, 372 Ill. App. 3d at 1052-53, 868 N.E.2d at 365-66. One of those cases was *State v. Rutzinski*, which, as indicated above, is where the quoted language originated. In *Rutzinski*, the Wisconsin Supreme Court held that a report of a drunk or erratic driver is on a different level of danger and requires prompt action, more so than a report of a concealed weapon. *Rutzinski*, 2001 WI 22, ¶ 34, 623 N.W.2d 516. In the latter instance, an officer could observe a violation before performing a stop " 'without running the risk of death or injury with every passing moment.' " *Rutzinski*, 2001 WI 22, ¶ 35, 623 N.W.2d 516 (quoting *State v. Boyea*, 765 A.2d 862, 867 (2000)). However, the same cannot be said for drunk or erratic drivers. Therefore, requiring an officer to observe a traffic violation before making a stop in the case of a report of an erratic or drunk driver is risky and invites injuries, fatalities, and an increased number of traffic accidents.

¶ 57      Here, unlike a concealed weapon, the erratic driving reported in this case is precisely the type of crime law enforcement should circumvent by initiating traffic stops without first observing a traffic violation.

¶ 58                          4. *Smulik Distinguished*

¶ 59      We also note that the facts and holding in *Smulik* are distinguishable from the case at hand. Unlike *Smulik*, the tip here was nonanonymous and therefore its reliability did not depend upon the existence of corroborative details observed by the police. In *Smulik*, the Second District concluded swift intervention was not warranted because the defendant's car was parked, and therefore, a less stringent standard of reasonable suspicion could not be applied. *Smulik*, 2012 IL App (2d) 110110, ¶ 11. However, unlike the situation in *Smulik*, defendant's car in this case was not parked. Rather, the tipsters reported that defendant was driving recklessly, and his vehicle was still in motion when Ayres effectuated the stop.

¶ 60                            5. *Defendant's Motion To "Quash Arrest"*

¶ 61       The trial court granted defendant's motion to "quash arrest" because it found Ayres did not have reasonable suspicion to stop defendant and any evidence that was gained from the stop would be "considered fruit of the poisonous tree." Because we have concluded that Ayres had reasonable suspicion to stop defendant, we reverse the trial court's decision and remand for further proceedings on defendant's DUI charge.

¶ 62       In closing, however, we note that defendant entitled his motion a motion to "quash arrest." The proper title for such a motion is "motion to suppress evidence." In his motion, defendant "moved to quash arrest" in light of the fact that the trial court had found that the "arresting officer lacked reasonable suspicion to conduct a traffic stop." Defendant was not asserting, nor should the court have found, that his arrest was void. See Black's Law Dictionary 1278 (8th ed. 2004) (to quash means "[t]o annul or make void"). Instead, what defendant was asserting and what the court ultimately found was that the arresting officer improperly stopped defendant's vehicle because he did not have reasonable suspicion to do so. When an improper traffic stop occurs, the appropriate remedy is to suppress the evidence obtained as a result on the ground that use of such evidence is a violation of the defendant's constitutional rights.

¶ 63       Suppressing the evidence obtained by the police as a result of an improper stop is the entirety of the relief to which a defendant is entitled. That is also the only relief provided for in section 114-12 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/114-12 (West 2010)), which is entitled, "Motion to Suppress Evidence Illegally Seized." Nothing in that section refers to or deals with purported "motions to quash arrest." Because such motions (1) are unnecessary to achieve a defendant's goal of suppressing evidence, (2) add nothing to an analysis of whether a motion to suppress based upon an allegedly illegal search or stopping (as here) should be granted, and (3) can only add confusion to such an analysis (after all, if a "motion to quash arrest" is granted, what relief does a defendant obtain beyond the suppression of the evidence in question due to the grant (as in this case) of defendant's motion to suppress?), defendants should stop filing such motions and should instead file only motions to suppress evidence.

¶ 64                                    III. CONCLUSION

¶ 65       For the reasons stated, we reverse the trial court's judgment and remand.

¶ 66       Reversed and remanded.

-11-